**FOSTER & CO. v. BOWLES, Price Adm'r.**
No. 140.

United States Emergency Court of Appeals.
Heard at New York July 13, 1944.
Decided Sept. 27, 1944.

Arthur C. Sullivan, of Boston, Mass., and Joseph E. Casey, of Clinton, Mass., for complainant.

John O. Honnold, Jr., of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Henry S. Sellin, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

This case involves a challenge to the right of the Administrator, under the Emergency Price Control Act of 1942,[1] to reduce a maximum price previously established for a commodity. The commodity is a blend of domestic whiskies sold under the trade name "Old Mr. Boston Rocking Chair".

The General Maximum Price Regulation,

---

[1] 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.

issued April 28, 1942,[2] was the first control established over the prices of bulk and packaged domestic distilled spirits. Generally it prescribed as the ceiling price for any commodity the highest price which had been charged by the seller for the same commodity in March 1942. Subsequently, on August 1, 1942, the Administrator issued Maximum Price Regulation No. 193,[3] providing certain changes in the maximum prices for domestic distilled spirits. By Section 1420.13 it was provided that for each seller the maximum price should be the highest price charged by him for the same commodity in March 1942, plus certain permitted additions. For distilled spirits for which the seller could not determine the maximum price by relying upon the March 1942 price, it was provided that the maximum price should be that established for the most closely competitive seller of the same class for such distilled spirits or for the similar commodity most nearly like it. Where maximum prices could not be established by either of the two named methods, an application was permitted to be filed with the Office of Price Administration for the approval of a proposed maximum price.

In April 1943, pursuant to the last method mentioned, complainant, a New York partnership engaged in rectifying, processing and bottling domestic distilled spirits, joined with two other firms in seeking approval of a proposed maximum price for a blend of bourbon whiskies which was to be produced under the trade name "Old Mr. Boston Rocking Chair". We are concerned here only with the situation of complainant. Its plan was to rectify and bottle an 80.6 proof blend of straight bourbon whiskey, composed of 25% four year old, 27% three year old, and 48% two year old whiskies. On May 22, 1943, the Administrator, by Order No. 5 under Maximum Price Regulation No. 193, authorized the applicants to sell "Old Mr. Boston Rocking Chair" at a ceiling price of $19.24 per case of 12 fifths and by the same order prescribed ceiling prices for sales of the brand by monopoly states and other retailers. Paragraph (g) of Order No. 5 stated: "This Order No. 5 may be revoked or amended by the Price Administrator at any time." On August 17, 1943, Order No. 5 was amended at the applicants' request to provide the same ceilings for a blend of rye whiskies to be bottled under the same brand name and formula.

According to the record, the "freeze" method of price control in the whiskey industry was found by the Administrator to be inadequate to withstand price pressures brought about by reductions in the supply of beverage spirits and greatly increased demand at the consumer level. One of the principal difficulties was found to have arisen from the practice of changing brand names, container sizes and formulas. Although some changes were required by Government limitation on supplies and containers, it was found that many changes were made in order both to avoid and to evade maximum price regulations. To overcome these difficulties, the Administrator, on August 9, 1943, issued Maximum Price Regulation No. 445—Distilled Spirits and Wines.[4] So far as here relevant, this Regulation temporarily continued the maximum prices established by Regulation No. 193 for sales by processors of packaged domestic distilled spirits and stated that the prices would be further regulated by provisions to be issued in the future.

On December 27, 1943, the Administrator issued Amendment No. 9 to Maximum Price Regulation No. 445, to become effective January 6, 1944.[5] The Amendment preserved the "freeze" method employed in earlier regulations, but confined its application to items which were exactly the same as those sold or offered for sale by the processor during March 1942, with respect to brand name, container size and formula. For items not sold in March 1942, dollars and cents maximum prices were established in terms of the formula and container size. The ceiling price established for "Old Mr. Boston Rocking Chair" whiskey was reduced by Amendment No. 9 from $19.24 per case to $18.62 per case.

Complainant states that after Order No. 5 under Maximum Price Regulation No. 193 was issued it acquired the necessary whiskey of balanced ages to rectify, process and bottle in excess of 1,500,000 cases of "Old Mr. Boston Rocking Chair" and that by December 27, 1943, when Amendment No. 9 was issued, it had sold or agreed to sell the total quantity to monopoly states and private enterprises. On January 5, 1944, the day before Amendment No. 9 became effective, sales of 1,099,935 cases

---

[2] 7 F.R. 3153.
[3] 7 F.R. 6006.

[4] 8 F.R. 11161.
[5] 8 F.R. 17415.

of the blend had not been completed and therefore became subject to the reduced ceiling. On February 24, 1944, complainant filed a protest objecting to the reduction in its ceiling price. Upon denial of such protest, complaint was filed in this Court.

Complainant objects to Amendment No. 9 insofar as it reduces the prices established by Order No. 5. Two basic propositions are relied upon: (1) that the Administrator has no authority to reduce the ceiling established by Order No. 5, and (2) that the reduction of the ceiling price was an unlawful interference with complainant's contracts.

■ Complainant argues that once the Administrator has established a price regulation which is generally fair and equitable, he is without authority to originate a change in its provisions; that unless requested by a substantial portion of the industry to do so, he may not reduce a maximum price which he has established. Sections 2(a) and 2(c) of the Act are referred to in support of this contention. We do not agree that the wording of these Sections sustains the argument of complainant. In our opinion it clearly compels an opposite view. By Section 2(a) the Administrator is given broad authority to "establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act." The reference to industry advisory committees[6] is not, as complainant maintains, a limitation on the right of the Administrator to reduce a maximum price, but is a grant to industry of the right to make suggestions concerning maximum price regulations.

■ Complainant claims that in the last sentence of Section 2(c), where the Administrator is authorized to provide a maximum price "below the price or prices prevailing,"[7] the term "price or prices prevailing" means prices established in competition and the term "maximum price" means the price established by the Administrator. From this complainant concludes that the Section authorizes the establishment of ceiling prices below the level set by competition but not below the level set by the Administrator. The plain meaning of the Section, however, is opposed to this construction. A maximum price set by the Administrator may also be a prevailing price and the clear intention is to authorize the Administrator to reduce such a price.

There are other indications in the language of the Act that the intention of Congress was to vest the Administrator with authority to alter maximum prices on his own initiative.[8] And moreover such authority is essential to the carrying out of the

6 Sec. 2(a) "* * * In the case of any commodity for which a maximum price has been established, the Administrator shall, at the request of any substantial portion of the industry subject to such maximum price, regulation, or order of the Administrator, appoint an industry advisory committee, or committees, either national or regional or both, consisting of such number of representatives of the industry as may be necessary in order to constitute a committee truly representative of the industry, or of the industry in such region, as the case may be. * * * The Administrator shall from time to time, at the request of the committee, advise and consult with the committee with respect to the regulation or order, and with respect to the form thereof, and classifications, differentiations, and adjustments therein. The committee may make such recommendations to the Administrator as it deems advisable * * *."

7 Sec. 2(c) "Any regulation or order under this section may be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act. * * * Any regulation or order under this section which establishes a maximum price or maximum rent may provide for a maximum price or maximum rent below the price or prices prevailing for the commodity or commodities, or below the rent or rents prevailing for the defense-area housing accommodations, at the time of the issuance of such regulation or order."

8 Section 204(a), in discussing the exclusive jurisdiction of the Emergency Court of Appeals which arises upon the filing of a complaint states: "Provided, That the regulation, order, or price schedule may be modified or rescinded by the Administrator at any time notwithstanding the pendency of such complaint."

Section 205(d) states:

"No person shall be held liable for damages or penalties * * * on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of * * * any regulation * * * notwithstanding that subsequently such provision * * * may be modified, rescinded, or determined to be invalid. * * *"

objects of the Act. There can be no question but that constantly occurring changes in the economy and improvements in price control techniques frequently call for changes of maximum prices. Rarely, if ever, will such changes be recommended by industry when, as frequently is the case, they entail reductions in the maximum prices which industry may charge. The Price Administrator, appointed to have charge of the program of price control, is the one who will be expected to act. Under these circumstances, this Court is not justified in imposing limitations upon his power to make required reductions of price levels unless the statute clearly requires it. In this case we find it does not.

The remaining questions before us relate to whether the contracts executed by complainant cast any different light upon the conclusion we have reached. Complainant suggests that its contracts were negotiated and executed with the full consent and approval of the Office of Price Administration, its position apparently being that the Administrator is bound in fairness not to reduce the ceiling price which he had specifically fixed for complainant's commodity when the effect is to interfere with contracts based on such a price. There is nothing in the record to indicate that the Administrator took any part in the negotiation of complainant's contracts and consequently we must assume he did nothing more than promulgate Order No. 5 fixing the maximum price for complainant's product. The Order specifically provided that it might be revoked or amended at any time. It appears moreover that complainant realized it had no right to the maintenance of the ceiling price established, since there was included in its contracts the following provision:

"5. The price per case to be paid by the Buyer to the Sellers for the merchandise hereby bought and sold shall be Fifths, $19.-24 per case net, not subject to discount, *or such other price or prices from time to time required by the Office of Price Administration.*" (Italics supplied.)

■ It is settled that private contracts executed prior to the passage of the Emergency Price Control Act will not be allowed to impede the proper execution of the Administrator's duties.[9] A fortiori where, as in this case, the contracts were executed subsequent to the passage of the Act with knowledge that they might conflict with the execution of the Administrator's duties, such contracts must give way to the public interest when the necessity arises. In the case before us the necessity arose to change the Regulation in order to bring about effective price control and complainant's contracts must yield to this necessity.

■ Complainant argues that the effect of Amendment No. 9 is to allow to those who held bulk whiskey for speculative purposes higher prices than complainant may charge. It it urged that while complainant is unable because of its contracts to alter its formula so as to be able to charge a higher ceiling price, other holders of bulk whiskey may alter their products to take advantage of higher prices allowed under Amendment No. 9 for whiskies of different formulas. The fact that all in the industry are not bound by contracts similar to those of complainant does not negative the Administrator's right to prescribe a maximum price below that called for by the contracts. A program of price control may affect those in the industry in different ways because of differing circumstances applicable to those in the industry.

■ Complainant argues that it and those with whom it contracted before Amendment No. 9 was adopted may complete their contracts without being subject to penalties and damages. In support of this point reference is made to Section 205 (d) of the Act, from which complainant draws the inference that the Price Administrator does not have the power to reduce a maximum price when the effect will be to invalidate existing agreements entered into in good faith pursuant to orders issued by the Administrator. Section 205(d) reads as follows:

"No person shall be held liable for damages or penalties in any Federal, State, or Territorial court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this Act or any regulation, order, price schedule, requirement, or agreement thereunder, or under any price schedule of the Administrator of the Office of Price Administration or of the Administrator of the Office of Price Administration and

---

[9] Philadelphia Coke Co. et al. v. Bowles, Em.App. December 15, 1943, 139 F.2d 349; Taylor v. Brown, Em.App. July 15, 1943, 137 F.2d 654, certiorari denied 320 U.S. 787, 64 S.Ct. 194.

Civilian Supply, notwithstanding that subsequently such provision, regulation, order, price schedule, requirement, or agreement may be modified, rescinded, or determined to be invalid. * * *"

We are not called upon to decide whether complainant would be subject to punishment if under the present state of the regulations it completes its contracts. This question will arise only in the event complainant completes its contracts and enforcement proceedings are brought in some court other than this. So far as the validity of the regulation reducing the maximum price is concerned, we think the indication of an intention not to permit damages or penalties by reason of a party's compliance in good faith with the provisions of a regulation is no indication of an intention to require an existing regulation to remain unchanged. On the contrary by providing an immunity from damages or penalties for parties acting pursuant to regulations, Section 205(d) obviously assumes that contracts will not be carried out according to their terms.

We have considered other arguments raised by complainant and find them to be without merit.

The complaint is dismissed.

MAGRUDER, Judge, concurs in the result.