## PORTER v. MERHAR et al.

### No. 10313.

Circuit Court of Appeals, Sixth Circuit.

April 3, 1947.

Geo. H. Silverman and Edward C. Benson, both of Cincinnati, Ohio (Geo. H. Silverman and Edward C. Benson, both of Cincinnati, Ohio, on the brief), for appellees.

Irving M. Gruber, of Washington, D. C. (George Moncharsh, David London and Irving M. Gruber, all of Washington, D. C., and Samuel Weiner, of Cleveland, Ohio, on the brief), for appellant.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Sometime after October 20, 1942, the appellee, Louis E. Merhar, purchased a house in Willoughby, Ohio, within the Cleveland Defense-Rental Area. The Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., expired on June 30, 1946. Five days thereafter, Merhar brought in a Justice of Peace Court in Willoughby an eviction action against Charles Jepson, tenant of Merhar's vendor. The Justice of Peace decided that Merhar was entitled to possession of the premises and issued a writ of restitution, returnable July 27, 1946. This writ placed in the hands of Constable Hager, was not executed prior to July 25, 1946. On that date, Congress enacted the Extension Act of 1946, by which section 18 thereof made the provisions of the Act effective retroactively as of June 30, 1946. 50 U.S.C.A.Appendix, § 901a note. This section provided, also,

that all regulations, orders, price schedules and requirements under the Emergency Price Control Act of 1942, as amended, except as related to meat, flour and sugar, and the Stabilization Act of 1942, as amended, 50 U.S.C.A.Appendix, § 961 et seq., which were in effect on June 30, 1946, would be effective in the same manner and to the same extent as if the Extension Act had been enacted on June 30, 1946.

On July 29, 1946, while the tenant Jepson was in physical possession of the premises, the Administrator of the Office of Price Administration filed in the District Court of the United States for the Northern District of Ohio a complaint against appellee Merhar and Constable Hager charging violation and threatened violation of lawful regulations promulgated pursuant to authority of the Emergency Price Control Act of 1942, as amended. Specifically, a violation was charged in that Merhar had failed to file with the Area Rent Director a petition for the required certificate to authorize him "to pursue his remedies in accordance with the requirements of local law."[1]

An injunction was prayed against the removal of the tenant; against the prosecution of the action, or any other eviction proceeding by Merhar, his agents or attorneys; and against the violation of any reg-

[1] In Rent Regulations for Housing, it is provided, inter alia:

"Sec. 6. Removal of Tenant—(a) Restrictions on removal of tenant. So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, * * * unless: * * * (6) Occupancy by landlord. The landlord owned, or acquired an enforceable right to buy or the right to possession of, the housing accommodations prior to the effective date of regulation (or prior to October 20, 1942, where the effective date of regulation is prior to that date, * * *), and has an immediate compelling necessity to recover possession of such accommodations for use and occupancy as a dwelling for himself, or has served during the period of the war emergency in the armed forces of the United States and in good faith seeks possession for his own occupancy. * * *
(b) Administrator's Certificate—(1). Removals not inconsistent with act or regulation. No tenant shall be removed or evicted on grounds other than those stated above unless, on petition of the landlord, the Administrator certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. * * * (2) Occupancy by purchaser. A certificate shall be issued authorizing the pursuit of local remedies to remove or evict a tenant of the vendor, for occupancy by a purchaser who has acquired his rights in the housing accommodations on or after the effective date of regulation (or on or after October 20, 1942 where the effective date of regulation is prior to that date, or on or after November 6, 1942 for housing accommodations within the Hastings Defense-Rental Area), only as provided in this paragraph (b) (2). * * * If the purchaser has, during the period of the war emergency, served in the armed forces of the United States, the certificate shall authorize the pursuit of local remedies at the expiration of four months after the date of filing of the petition, unless the Rent Director has determined that the maximum waiting period in the area shall be three months, in which event the certificate shall authorize pursuit of local remedies at the expiration of two months after the date of filing of the petition."

In Interpretation 6-VI, issued July 25, 1946, the OPA declared officially, as to evictions pending on July 25, 1946, that if the tenant "is in possession on July 25, 1946, he is entitled to the protection of the eviction provisions of the regulation and it is a violation of the regulation for the landlord on or after that date to attempt to evict by court process or otherwise except in accordance with the provisions of Section 6 of the regulation." Illustration was thus given: "L obtained a certificate relating to eviction under Section 6(b) (2) effective six months from June 1, 1946. On July 1, 1946, L instituted an eviction action and obtained judgment on July 15, 1946, but T was still in possession on July 25, 1946. Although L's action in instituting suit was not a violation by reason of the savings clause in the Act, any attempt by L to evict on or after July 25, 1946, by the utilization of court processes or otherwise is a violation of the regulation. L can, of course, proceed to evict under local law at the expiration of six months from June 1, 1946."

ulation or requirement relating to rent or the recovery or possession of real property, then issued or thereafter to be issued by the Price Administrator pursuant to the Emergency Price Control Act of 1942, as amended. It was also prayed that the constable, Hager, his deputies and agents be enjoined from directly or indirectly excluding or removing, or threatening to exclude or remove, the tenant, Jepson, from possession of the premises, and from executing any writ of restitution in the case.

On the date of the filing of the complaint, the United States District Judge issued a temporary restraining order as prayed therein. Immediately following a hearing on the motion for a preliminary injunction, however, the district judge entered an order denying the motion, from which the Price Administrator of OPA has appealed to this court.

It appears from the affidavit of an attorney in the Cleveland office of OPA, and is conceded, that the appellee, Merhar, failed to file a petition requesting the Administrator to issue a certificate authorizing him to pursue his remedies for the removal or eviction of the tenant, Jepson. [See abstract of pertinent rent regulation in footnote (1).]

Without a formal opinion, the district judge entered a bare order denying injunctive relief but made his reasons therefor apparent in colloquy with the attorneys at the hearing. It was his considered judgment that everything done by the appellee had been lawful under the OPA Extension Act, and that the legal effectiveness of appellee's actions toward the eviction of the tenant should not be destroyed merely because the eviction order, or writ of restitution, had not been served before July 25, 1946, when the Extension Act was enacted by Congress.

■ The attorney for OPA insisted that the regulation specifically declared against eviction in the circumstances of the case, and urged that the court was necessarily ruling that the regulation is invalid. The Judge rejoined: "It is invalid insofar as this case is concerned"; but explained that his judgment was not based upon the invalidity of the regulation. The Judge made the additional statement that, in considering the equities, the fact that the landlord was a discharged veteran, seeking possession of his own property for his own use should have material bearing upon decision. In this viewpoint, we think the court erred, for the reason that the veteran did not acquire the property by purchase until after October 20, 1942. [See footnote 1.]

■ It has been established beyond controversy that the validity of a regulation, order, or price schedule, issued by the OPA Administrator may be challenged only in the Emergency Court of Appeals, from whose judgment an appeal lies to the Supreme Court of the United States. Sec. 204(d) of the Emergency Price Control Act, as amended, 56 Stat. 23, 50 U.S.C.A. Appendix, § 924(d); Shrier v. United States, 6 Cir., 149 F.2d 606; The Star Steel Supply Company v. Chester Bowles, Adm'r, 6 Cir., 159 F.2d 812; Gomila v. United States, 6 Cir., 159 F.2d 1006; Lockerty v. Phillips, 319 U.S. 182, 186, 187, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 429, 430, 431, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Bowles v. Seminole Rock Co., 325 U.S. 410, 418, 419, 65 S.Ct. 1215, 89 L.Ed. 1700.

■ We think that the order of the district court denying the motion for preliminary injunction should be reversed. We agree with the reasoning and conclusions of the Tenth Circuit Court of Appeals in Porter v. Shibe, 158 F.2d 68, wherein the constitutionality of the Price Control Extension Act of 1946 was upheld. The retroactive re-establishment of OPA regulations, defeating the landlord's right to possession, does not constitute a deprival of property without due process of law. It was held, in the Shibe case, that termination of a tenancy under state law during the interim period between June 30, 1946, when the Emergency Price Control Act expired, and July 25, 1946, when its effective provisions were re-enacted to take effect retrospectively, does not countenance a landlord's eviction of his tenant in possession on July 25, 1946.

It has been declared by the Emergency Court of Appeals that rent regulations pro-

mulgated by the OPA Administrator may be valid, though impairing existing contracts. See Taylor v. Brown, 137 F.2d 654, certiorari denied 320 U.S. 787, 64 S.Ct. 194, 88 L.Ed. 473; Foster & Co. v. Bowles, 144 F.2d 870, 873. That a purchaser at a judicial sale is not deprived of his property without due process of law by the exercise of the power of Congress to extend the period of redemption from foreclosure sales was the unequivocal holding in Wright v. Union Central Life Insurance Co., 304 U.S. 502, 515, 516, 58 S.Ct. 1025, 82 L.Ed. 1490. Cf. Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481.

■ The argument of the appellee that section 265 of the Judicial Code, 28 U.S.C.A. § 379, prevents federal courts from staying state court proceedings in a case of this character was rejected in Porter v. Dicken, 328 U.S. 252, 254, 255, 66 S.Ct. 1094, 1095, where the Supreme Court said: "The District Court erred in holding that the policy of Section 265 of the Judicial Code should not be considered impaired by the Emergency Price Control Act. While we realize that Section 265 embodies a long-standing governmental policy to prevent unnecessary friction between state and federal courts, Toucey v. New York Life Insurance Co., 314 U.S. 118, 126, 62 S.Ct. 139, 140, 86 L.Ed. 100, 137 A.L.R. 967, we still hold as we held in Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, that Section 205 of the Price Control Act which authorizes the Price Administrator to seek injunctive relief in appropriate courts, including federal district courts, is an implied legislative amendment to Section 265, creating an exception to its broad prohibition. This is true, because Section 205 authorizes the Price Administrator to bring injunction proceedings to enforce the Act in either state or federal courts, and this authority is broad enough to justify an injunction to restrain state court evictions. But if Section 265 controls, as the District Court held, the Administrator here could not proceed in the federal court, since there is a proceeding pending in a state court. Since the provisions of the Price Control Act, enacted long after Section 265, do not compel the Administra-tor to go into the state courts but leave him free to seek relief in the federal courts, he was not barred by Section 265 from seeking an injunction to restrain an unlawful eviction. Cf. Hale v. Bimco Trading, Inc., 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771."

Porter v. Dicken, supra, is directly controlling authority. In that case, a writ of possession directing the sheriff of a county to evict a tenant and place purchasers in possession had been obtained from a state court, but before the sheriff executed the writ the Price Administrator had brought an action for injunction in the federal district court upon a showing that no certificate authorizing the eviction had been sought or obtained from the Price Administrator as required by section 6 of the Rent Regulation for Housing, 10 F.R. 3436, 13528. The judgment of the district court dismissing the complaint was reversed and the cause remanded to that court for the exercise of the jurisdiction conferred upon it by section 205 of the Emergency Price Control Act, notwithstanding the fact that this circuit court of appeals had denied an application for injunction prohibiting the eviction pending appeal.

Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, decided on the same day, the facts of which are fully set forth in the opinion of the Supreme Court, likewise requires reversal and remand of the instant case. There, the Price Administrator had appealed to this court from orders dismissing his complaint, in which he sought to restrain enforcement and execution of judgment of eviction. He made prompt application to us for an injunction pending appeal. The application was denied. The landlord moved for dismissal of the case as moot, and supported his motion by an affidavit showing that the premises had been vacated by the tenants. The Price Administrator submitted a counter affidavit stating that the tenants had not vacated the apartment from choice, but had been compelled to do so by the service of a writ of possession. We dismissed on the ground that the controversy was moot, but our holding was reversed. Remand to the district court was ordered for trial of the issues on the merits. The same course is necessary in the present litigation.

■ An affidavit of the tenant, Jepson, states that he was, on August 1, 1946, evicted by Merhar in consequence of which his family had been forced to be separated; and that, until August 14, 1946, he still desired to move back into the premises in controversy but was prevented from doing so by the appellee's refusal to surrender possession of the house to him and his family. Constable Hager's affidavit declared that on August 1, 1946, he went to Jepson's home and said: "Well, you lost at Cleveland and it is up to you to move." Possessed of a writ of restitution at that time, the Constable by these words justified the belief of the tenant that he was being lawfully evicted from the premises. It is illogical to say, as appellee does, that Jepson voluntarily abandoned the premises. Cf. Henderson v. Fleckinger, 5 Cir., 136 F.2d 381.

■ The later sworn certificate of Jepson, dated January 16, 1947, and filed February 20, 1947, stating that he is no longer interested in the rental of the residential property involved in the litigation does not have the effect of rendering the case moot, insofar as pertains to the duty imposed upon us by the teaching in Porter v. Lee, supra, to decide whether the district court erred in dismissing the Price Administrator's application for injunction. As has already been shown, we regard the action of the district court as plainly erroneous; and it is our duty to reverse, even if it appears, as it does, that the tenant no longer desires occupancy of the premises from which he was unlawfully evicted.

Pending a hearing of this appeal, the appellant Price Administrator filed, on December 9, 1946, a petition for a rule to show cause why the appellee, Merhar, should not be adjudged guilty of contempt of court. Upon application of appellant, one of the judges of this court had issued, on August 6, 1946, a restraining order against Merhar and Constable Hager, enjoining them from directly or indirectly continuing to exclude the tenant, Jepson, from the housing accommodations in controversy and further directing them to make available and restore the premises to Jepson for his occupancy. A copy of this order was delivered to appellee, Merhar, by registered mail.

Concededly, he deliberately disobeyed it. According to the affidavits of Kabalan and McAllister, investigators employed in the Cleveland office of OPA, the appellee told them, on August 13, 1946, that he had received a copy of the order, had read it and understood that he must surrender immediate possession to the tenant, but that he did not intend to comply with it. According to affiants, Merhar stated, without mentioning names, that he had been advised by at least 75 attorneys, by a federal district judge, and by a local justice of the peace that he was "not in contempt" and that he could not move out with his wife "in her condition, anyway."

An attorney in the Cleveland office of OPA, Sanford S. Simms, made oath that an attorney for appellee stated to him on August 10, 1946, that appellee had no intention of complying with the order. Affiant swore that, in telephone conversations with Jepson on August 8 and August 10, the latter declared his intention and desire to reoccupy the premises as soon as the appellee vacated them in compliance with the circuit court order. The affidavit stated further that Jepson forwarded to affiant a postcard, dated August 10, 1946, received from an unknown source on August 12, containing the statement that the "Klan" would take care "of this tenant in the event he moved back into the accommodations." On August 15, the affiant was advised by Jepson, by telephone, that in view of all the circumstances and the failure of appellee to vacate, Jepson's family had decided that "it would be more advisable not to take possession, and remain with their friends until such time as the tenant will move to the West Coast, which may be in the near future." In support of the Administrator's petition for the contempt citation, Jepson made an affidavit to the effect that, though he himself desired to move back, Merhar had refused to comply with the circuit court order to make the premises available for his use and occupancy.

■■ Appellee argues that Jepson had vacated the premises on August 1, 1946, when there was no restraining order; but, as we have shown, Jepson had moved only in response to the direction of the Constable, armed with a writ from the justice

of peace who directed the eviction. Appellee further contends that Judge Miller, the member of our court who issued the order, was without jurisdiction to issue it, for the reason that the Administrator did not give appellee four days' notice of the hearing of the motion, as required by Rule 23, paragraph 2, p. 19, of the rules of this court. He asserts that our court records show that the motion for injunction was filed in Cincinnatti on August 6, 1946, that notice was given to his attorney in Cleveland on the previous day that the motion would be heard on August 6 at two o'clock p.m., before Judge Miller in Louisville, Kentucky; and that it was physically impossible for appellee to be represented at the hearing of the motion on 24 hours' notice. But we take judicial notice of the fact that the attorney for appellee transmitted a telegram to Judge Miller, stating not that he did not have sufficient time to appear at the hearing, but that appellee could not afford to be represented. The position of appellee and the authority upon which he relied were embraced in this telegram and no request for additional time was made. It is, therefore, obvious that no error was committed by Judge Miller in suspending the court rule and acting with dispatch upon a pressing matter. The purposes of justice required the course pursued. See opinion of Chief Justice Taney in United States v. Breitling, 61 U.S. 252, 254, 15 L.Ed. 900.

Moreover, in a contempt case, disobedience to a court injunction is not justified by an allegation that the court erred in issuing it. Brotherhood of Ry. and S. S. Clerks, etc., v. Texas & N. O. R. Co., D.C.S.D.Tex., 24 F.2d. 426, Hutcheson, D. J., affirmed 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. "Errors must be corrected by appeal and not by disobedience." Brougham v. Oceanic Steam Navigation Co., 2 Cir., 205 F. 857, 860. The violation of a criminal contempt order of court would be punishable as criminal contempt, even had the basic action become moot. United States v. United Mine Workers of America (United States v. John L. Lewis), 67 S.Ct. 677.

The appellee here was in contempt of court, however, for disobedience to the lawful restraining order issued by Circuit Judge Miller on August 6, 1946. In the light of the extenuating circumstances of his apparent ignorance of court procedure and his receipt of wrong advice, appellee need not be severely punished. A fine consonant with preservation of the dignity and binding effect of a court order would seem to be adequate. Louis E. Merhar is, accordingly, fined the sum of $100 for contempt.

The case is remanded to the district court with direction to vacate the order entered by it denying injunctive relief, and to proceed further as may be required to conform with this opinion.