**PROFESSIONAL HOCKEY CLUB CENTRAL SPORTS CLUB OF THE ARMY, Plaintiff,**

**v.**

**DETROIT RED WINGS, INC., a Michigan corporation, Defendant.**

**No. 92–CV–71233.**

United States District Court, E.D. Michigan, S.D.

March 19, 1992.

Sharon M. Woods and Stephen E. Glazek, Barris, Sott, Denn & Driker, Detroit, Mich., for plaintiff.

Michael B. Lewiston, David G. Chardavoyne and Charles N. Raimi Bodmon, Longley & Dahling, Detroit, Mich., for defendant.

## OPINION REGARDING JURISDICTIONAL ISSUES

ROSEN, District Judge.

### INTRODUCTION

This matter is before the Court on Plaintiff Professional Hockey Club Central Sports Club of the Army's ("Hockey Club") Motion for Temporary and Preliminary Injunction. In that motion, Plaintiff asks the Court to issue a temporary restraining order and preliminary injunction barring Defendant Red Wings, Inc. ("Red Wings") from interfering with the Hockey Club's alleged contractual rights to the personal services of a hockey player, Viacheslav Anatolievich Kozlov ("Kozlov"), whom it claims has signed a valid contract to play for it. Plaintiff also requests that the Court enjoin the enforcement of a preliminary injunction enjoining the National Hockey League ("NHL") from enforcing the contract between the Hockey Club and its player. The Defendant has responded

and oral argument was heard on March 13, 1992.

Defendant has challenged the power of the Court to decide this matter. It claims that the Court both lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and may not overturn the state court injunction pursuant to the Anti–Injunction Act. If Defendant is correct, the Court lacks the power to reach the evidentiary issues surrounding the requested injunction. This Opinion, therefore, focuses only on the jurisdictional issues. If it is determined that this Court has jurisdiction, the evidentiary issues will be decided at a later date.

## STATEMENT OF THE CASE

On March 6, 1992, the Hockey Club brought a Complaint for Injunctive Relief against the Red Wings. Jurisdiction was premised on diversity since the Hockey Club is a citizen of Russia and the Red Wings is a citizen of Michigan. In that Complaint, the Hockey Club requests the temporary, preliminary, and permanent injunction of (1) the contract between Kozlov and the Red Wings and (2) the March 6, 1992 preliminary injunction entered by the Honorable Sharon Tevis Finch of the Circuit Court for the County of Wayne.

The Hockey Club also filed a Motion for Temporary and Preliminary Injunction with the Honorable Patrick J. Duggan on March 6, 1992.[1] Judge Duggan refused to grant the temporary restraining order at that time but entered an Order to Show Cause asking the Red Wings to explain at a March 9, 1992 hearing why the temporary restraining order should not enter. The Red Wings responded to the Order to Show Cause on March 9, 1992. On March 9, 1992, the parties, through counsel, met with the Court in chambers. After hearing the parties' positions, the Court decided that the issues raised were not immediately resolvable. It set a hearing for March 13, 1992 and permitted the parties to file sup-

plemental briefs. On that date, the parties argued the jurisdictional issues before the Court.

## BACKGROUND

### I. HOCKEY CLUB—KOZLOV CONTRACT

In August 1991, while a private in the Soviet Army, Kozlov allegedly signed a contract with the Hockey Club to play hockey for the club until May 1994.

The parties' description of the circumstances surrounding the execution of this contract varies dramatically. Kozlov, in an affidavit, claims that he was summoned to a meeting at an army base where Valeri Gushin, an assistant coach and general manager of the Hockey Club, told Kozlov to execute a hockey contract which had already been filled out. Gushin allegedly said that the contract was nonnegotiable and that failure to sign the contract would effectively end Kozlov's hockey career. Gushin added that if he did not sign, Kozlov would not be allowed to play on the Soviet national team and that he would serve his two year military service in a remote location. Further, Gushin allegedly refused Kozlov's request to take the contract home to show to his father before execution. Kozlov then signed the contract but claims that he was not given a copy.

Gushin, in his affidavit, counters that Kozlov signed the contract of his own volition and that at no point did Gushin represent that failure to sign would jeopardize Kozlov's hockey career or affect his military assignment. He also denied refusing Kozlov's request to consult with his father.

On September 18, 1991, Kozlov signed a second contract with the Hockey Club extending the duration of his commitment until September 1996. This new contract also provided a significant salary increase as well as the right to obtain an automobile and an apartment.

Again, the signatories' perception of the circumstances surrounding the signing of

---

**1.** This case was assigned to the Honorable Julian Abele Cook, Jr. The Honorable Patrick J. Duggan, as the presiding judge, received the request for a temporary restraining order in Judge Cook's absence. As Judge Duggan later recused himself, resolution of this matter was then transferred to this Court.

this second contract is decidedly different. Kozlov claims he was summoned by officials of the Hockey Club—Victor Tikhonov, the head hockey coach, Vladimir Popov, an assistant hockey coach, and two other representatives of the club—and told to sign the second contract. He claims that he was again threatened (although the nature of these alleged threats is unclear from Kozlov's affidavit). He signed the new contract but again did not receive a copy.

As told by Nugzar M. Nachkebiya, president of the Hockey Club and signatory to the second contract, at no time during the negotiation or execution of the September 18, 1991 contract did he or anyone else threaten Kozlov. Kozlov's affidavit, though naming two Army Club representatives, does not mention Nachkebiya by name.

In October 1991, Kozlov was involved in a serious car accident. After two months of medical care in the hospital, he was, at his own request, transferred to his parents' home where he continued his convalescence.

In January 1992, Colonel Anatoli Akhentiev ("Akhentiev"), head of the Central Sports Club of the Army ("CSKA"), issued an order which released Kozlov from active military service and dismissed him from the "Club roster" for medical reasons. The translation of this order reads in full:

EXTRACT FROM THE ORDER OF
THE CHIEF OF THE CENTRAL
RED ARMY CLUB # 18

January 28, 1992
Moscow
(Combatant Unit)
Viacheslav Anatolievich Kozlov, a private soldier and athlete (hockey player, Elite League) from Department # 2 (hockey soccer) is to be released from active military duty into retirement according to a Clause # 103.A (illness) from regulations on active military service in the Army and Navy. Starting from January 28, 1992, *Kozlov is dismissed from the Club roster* and stripped of all privileges of his rank. He is to be put on the Krasnogvardeisky draft point list in Moscow. This decision has been made on the grounds of the certificate of illness # 033 from 12/16/91 issued by a medical military commission of the Central Military Hospital #.6 within the Ministry of Defense.

This is a true copy.
Chief Administrative Officer
(Emphasis added.)

Kozlov claims that this order released him from any contractual duty to play hockey in Russia. Thus, according to Kozlov, there is no longer any contract between him and the Hockey Club.

Nachkebiya counters that Akhentiev had no authority to release Kozlov from the Hockey Club contract. Rather, he claims that the order releases Kozlov from *the Soviet military*.[2] According to Nachkebiya, in June 1991, the Hockey Club was formed as an entity separate and distinct from the Central Red Army Club.[3] As Kozlov signed his contracts with the Hockey Club after it had been established as a separate entity, says Nachkebiya, these contracts are between Kozlov and the Hockey Club and do not involve the Central Red Army Club. Consequently, any order signed by Akhentiev could only release Kozlov from military duty and any duties toward the Central Red Army Club. This order, however, could have no effect on the

**2.** He further alleges that this release was in response to a request from the Hockey Club.

**3.** A translated government document allegedly attesting to this separation states, in relevant part, the following:
With this document we are testifying that the enterprise:
Professional Hockey Club CSKA
has passed the government registration at the Taganski County People's Deputies of Moscow.

Chairman of Deputies: [signature illegible]
The precise relationship between the Hockey Club and the Central Red Army Club remains unclear. As noted above, though apparently recognized as a separate entity, the acronym after "Professional Hockey Club," "CSKA," is an "a/k/a" for the Central Red Army Club. This indicates that there may still be some nexus between the Hockey Club and the Central Red Army Club. Further, throughout the record, the Hockey Club is referred to as CSKA.

contracts between Kozlov and the Hockey Club.

## II. RED WINGS—KOZLOV CONTRACT

In September 1991, a Red Wings representative allegedly approached Hockey Club General Manager Gushin in Toronto and presented a written proposal concerning player acquisition. According to the Hockey Club, this proposal is significant in that it indicates the Red Wings's understanding that the Hockey Club was entitled to receive compensation for the players who sign with the NHL. It proposes to pay the Hockey Club[4] $150,000.00 if an agreement is entered between the Hockey Club and the Red Wings regarding the other players "whose rights are held by Detroit." It further proposes to pay the Hockey Club $300,000.00 for the rights to Kozlov. The proposed terms of Kozlov's acquisition are as follows: Kozlov would maintain his status as a member of the Hockey Club and play for the Hockey Club during the 1991–92 season as well as in the 1992 Olympics. Following the Olympics, Kozlov would come to the United States to finish the NHL season with the Red Wings and possibly play in the Stanley Cup Playoffs. He would then be permitted to return to the Hockey Club for its 1992–93 season. After this season, Kozlov would again come to the United States and would thereafter remain a member of the Red Wings. The Hockey Club, through Gushin, rejected this proposal.

In November 1991, Red Wings representatives allegedly went to Russia to contact Kozlov directly. According to the Hockey Club, the Red Wings advised Kozlov to return his uniform and refuse his salary. The Red Wings counters that the Hockey Club demanded that Kozlov return his uniform and that the Hockey Club had failed to pay Kozlov's salary or otherwise honor the terms of the alleged contract.

In February 1992, Gushin wrote to the NHL explaining that the Hockey Club was concerned about the Red Wings's activities. In response, the NHL allegedly advised the Red Wings that if Kozlov's Russian contract is valid, the NHL will reject any contract between Kozlov and the Red Wings. Under an agreement between the NHL and the International Ice Hockey Federation ("IIHF"), hockey's governing body in the former Soviet Union and Europe, the NHL does not permit its members to enter into employment contracts with players who have existing contracts with hockey clubs or teams affiliated with the IIHF or the NHL. John Zeigler, Jr., president of the NHL, states the following in his affidavit:

In order to prevent the unlawful inducements of breaches of contracts and to avoid costly and multiplicious litigation, the IIHF and the NHL have agreed to respect the valid hockey playing contracts of the respective members. *Thus, the National Hockey League will not permit a National Hockey League team to enter into an employment contract with a player who is a party to an existing hockey playing contract with an ice hockey team which is affiliated with the International Ice Hockey Federation that appears to be valid on its face.* Similarly, the IIHF prohibits its members from employing NHL members who are under an NHL contract to an NHL team. The National Hockey League has entered into a similar understanding with the USSR Ice Hockey Federation. (Emphasis added.)

On February 20, 1992, Kozlov signed a contract to play hockey for the Red Wings for the remainder of the current season and continuously through the 1994–95 season.

## III. KOZLOV—CSKA/NHL LAWSUIT

On February 21, 1992, Kozlov brought suit in Wayne County Circuit Court against "CSKA a/k/a/ Central Red Army Club" and the NHL seeking a declaration that certain contracts to play hockey for the Hockey Club were invalid for various reasons including duress, breach of contract

---

4. The Red Wings proposal refers to the Hockey Club at all times as "CSKA."

by the other party, and release. At the same time, Kozlov moved for a preliminary injunction. Judge Sharon Finch entered an order to show cause on that motion.

On February 26, 1992, Nachkebiya was served with the complaint, motion for preliminary injunction, and order to show cause. On March 2, 1992, the Hockey Club filed the following in the state court: (1) a special appearance to contest personal jurisdiction; (2) an answer and brief in opposition; (3) a motion and brief seeking dismissal of entire case for lack of personal jurisdiction over the Hockey Club; and, (4) an ex parte motion for a protective order.

On March 6, 1992, Judge Finch heard arguments by attorneys for the Hockey Club, the NHL, and Kozlov. The NHL apparently took no position at this hearing, and neither supported nor approved the relief requested by Kozlov. Judge Finch then ruled that: (1) the Hockey Club was dismissed from the lawsuit because it lacked minimum contacts with Michigan necessary for personal jurisdiction; and (2) the preliminary injunction would be granted as to the NHL because Kozlov had demonstrated a substantial likelihood of success on the merits of his claim that his alleged contract with the Hockey Club is void. The Court further held that Kozlov would suffer irreparable injury unless the preliminary injunction was granted. The court further held that the NHL would suffer no irreparable injury as a result of the preliminary injunction.

## IV. HOCKEY CLUB—RED WINGS LAWSUIT

Directly after the entry of this order, the Hockey Club filed the Complaint and mo-tion that are now before the Court. In its motion, the Hockey Club asks for two forms of relief. First, it asks the Court to enjoin the Red Wings from interfering with its contract with Kozlov (this includes a request that the Red Wings be prohibited from playing Kozlov). Second, it asks the Court to enjoin the state court's injunction of the NHL.

## JURISDICTIONAL ISSUES

In its opposition brief, the Red Wings challenges this Court's jurisdiction over this action. It claims that the Court lacks subject matter jurisdiction and that the Anti–Injunction Act prohibits the Court from addressing the Hockey Club's motion. The Court addresses these threshold claims below.[5]

## I. SUBJECT MATTER JURISDICTION

The named parties in this action, the Hockey Club and the Red Wings, are diverse. However, if Kozlov were to join in this lawsuit as a defendant, diversity jurisdiction would be defeated as both the Hockey Club and Kozlov are Russian citizens and a federal court may not exercise diversity jurisdiction over cases in which foreign parties are on each side. *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir.1985). The Hockey Club maintains that Kozlov need not be joined in this lawsuit as the action is against the Red Wings for interference of contract and Kozlov is not a party to that claim. The Red Wings counters that Kozlov is an indispensable party in that he will be prejudiced if he is not joined. If Kozlov were indispensable, this Court would have to dismiss the action as it would be unable to maintain subject

---

**5.** At oral argument, the Red Wings argued that this Court should abstain from judgment under the abstention doctrine. As the Court finds that the abstention doctrine does not apply in this case, it will not discuss it in the body of this Opinion. The doctrine of abstention would perhaps be applicable in this case were the instant parties, the Hockey Club and the Red Wings, involved in the state court action. However, as is the case here, when the state court action does not include the federal parties, abstention is patently inappropriate. As noted by the Supreme Court:

When a district court decides to dismiss or stay under *Colorado River* [abstention doctrine], it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues before the parties. *If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.*
*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983) (emphasis added).

matter jurisdiction with Kozlov as a defendant.

## A. RULE 19—JOINDER

[2] The guidelines for joinder and indispensability are set forth in Fed.R.Civ.P. 19. Rule 19(a) establishes a test to determine whether a person should be joined in an action.[6] If an absent person should not be joined, the inquiry is at an end. Only if an absent person should be joined need a court ask whether it is feasible to join him. If he should be joined and it is feasible to join him, he is to be joined as a necessary party. If he should be joined and it is not feasible to join him, the court advances to Rule 19(b) to determine whether or not he is indispensable. *Temple v. Synthes Corp.,* — U.S. ——, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) (holding that Rule 19(b) inquiry necessary only if party satisfies threshold requirement of Rule 19(a)). Therefore, Rule 19 provides a three part test. First, the court determines whether a party should be joined. If so, the court asks whether joinder is feasible. If it is, the party is to be joined. If not, the court determines whether "in equity and good conscience," the action should continue without him or be dismissed. *See Local 670, United Rubber, etc. v. International Union, United Rubber, etc.,* 822 F.2d 613, 618 (6th Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988).

### 1. Rule 19(a)

■ Kozlov is a party who should be joined if feasible. The narrow subject matter of this lawsuit is the alleged tortious interference with contract by the Red Wings. However, the question of the validity of Kozlov's contract with the Hockey Club is unavoidably and inextricably interwoven with this alleged tort. If the Kozlov–Hockey Club contract is invalid, there is no contract with which the Red Wings could have interfered. Therefore, in examining the Hockey Club's tort claim, the Court is forced to analyze the underlying contractual dispute between Kozlov and the Hockey Club. If the Court holds that the Red Wings interfered with the Kozlov–Hockey Club contract, it will also necessarily be holding that that contract is valid and enforceable. Against this background, it becomes clear that Kozlov has an interest in the subject matter of this litigation.

Moreover, the Court is unable to say that Kozlov's absence in this lawsuit might not "as a practical matter impair or impede" his ability to protect that interest under Rule 19(a)(2)(i).[7] It is possible, for example, that were Kozlov joined, he would present evidence in support of his claim that his contract with the Hockey Club is invalid which would be distinct from the evidence proffered by the Red Wings to defend against the tortious interference with contract claim. For this reason, the Court finds that Kozlov is a party who should be joined if feasible under Rule 19(a).

### 2. Rule 19(b)

■ However, Kozlov cannot be joined in this lawsuit as his joinder would defeat the diversity jurisdiction of this Court. Therefore, the Court must advance to Rule 19(b) which begins: "If a person as described in

---

**6.** Rule 19(a) provides that a person shall be joined in the action if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

**7.** The Court stresses that the relevant question to ask under the Rule 19(a) analysis is whether it is *desirable* to join Kozlov in this lawsuit. *See* Rule 19, Notes of Advisory Committee on Rules ("New subdivision (a) defines the persons whose joinder in the action is desirable"). Therefore, in determining whether Kozlov satisfies Rule 19(a), the Court is fully cognizant that the context of this inquiry is not Kozlov's *indispensability* but rather the desirability of his joinder. Consequently, the Court need not determine with absolute certainty at this point whether Kozlov's interests would be impaired by nonjoinder; rather, it must ask whether such nonjoinder "*may* as a practical matter" impede his interests.

subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." As Kozlov cannot be made a party under Rule 19(a), the Court must determine whether "in equity and good conscience" this action should proceed with the named parties or be dismissed.

Rule 19(b) sets forth four nonexclusive [8] factors to serve as guidelines in the determination of whether an absent party is indispensable. They are as follows:

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). The determination of whether a party is indispensable must be made on a case by case basis and is dependent on the facts of each case. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Using these four factors as guidelines, the Court will balance the equities in this case to determine whether it may continue without Kozlov or whether it should be dismissed.

The essence of this case is a dispute between an American hockey team and a Russian hockey team over the affiliation of one hockey player. Clearly Kozlov has an interest *in the result* of this litigation (as does his family, other Russian hockey players, and Russian and American hockey spectators). This, however, is not the focus of the indispensability analysis. Rather, the analysis under Rule 19(b) focuses on factors which would be indicative of whether Kozlov's presence *as a party* in the lawsuit was indispensable to the progress and resolution of the issues presented in the lawsuit. Thus, to a great degree, the factors outlined in the Rule suggest a balancing test between the interests of the absent party and those parties already in the case. In this context, the crisp question for analysis is whether, on balance, the Hockey Club's interest in maintaining its cause before a federal court is greater than Kozlov's interest in being a named party in this lawsuit.

The Court believes that Kozlov's interest *in the subject of this dispute* will not be significantly prejudiced if he is not joined in this lawsuit. On the Kozlov side of the balancing equation, the single most important consideration in determining whether Kozlov's absence will prejudice his interests is whether his interests are adequately protected by the Red Wings. 3A *Moore's Federal Practice* § 19.07–2[1] (1991). If they are, his absence will have little, if any, effect. If they are not, he will quite possibly be prejudiced by his absence.

To determine whether Kozlov's interests will be adequately protected by the Red Wings, the Court must delineate the interests of Kozlov and the Red Wings as they relate to this lawsuit. This is not difficult as these interests are almost identical. Simply phrased, both wish Kozlov to play hockey for the Red Wings. Specifically, both would like to demonstrate that the contract between Kozlov and the Hockey Club is invalid because of (1) release, (2) breach by the Hockey Club, or (3) duress. If this contract is invalid, there is no agreement with which the Red Wings could be accused of having interfered. Moreover, there is no basis on which the Hockey Club could prevent Kozlov from playing hockey for the Red Wings.

This conclusion as to the similarity of interests is bolstered by a review of the pleadings by Kozlov in the state court action and the defenses of the Red Wings to

---

**8.** *See* Rule 19 Notes of Advisory Committee, The    Amended Rule, Subdivision (b).

the instant action. Kozlov's pleadings and the Red Wings's defenses are identical.[9] Further, in the course of the hearing and/or trial, Kozlov will testify and have a full opportunity to explain his view of the underlying contractual facts which are in issue in this case, and the Court will have an opportunity to observe, and to question, Kozlov.

In *Local 670, supra,* the Sixth Circuit engaged in an analysis of Rule 19(b) in a similar context. In that case, the company entered into a wage reduction agreement with one of five local unions (Union 1). Another local union (Union 2) complained that as a result of this wage reduction agreement, the company laid off some of its members. Union 2 then sued the company for breach of contract. The company brought a motion to dismiss for failure to join Union 1 as an indispensable party. The district court agreed and ordered Union 2 to join Union 1. However, when Union 1 refused to waive personal jurisdiction, the court dismissed the action noting that Union 2 had the ability to pursue its claims elsewhere. *Id.* at 616–17.

In reversing the district court on its finding of indispensability, the Sixth Circuit stressed that the interests of Union 1 were adequately protected by the company. The court specifically noted that the indispensability analysis focuses not on the absent party's interest in the consequences of the lawsuit but rather on his interest in the ongoing legal proceeding itself:

> Local 703's [Union 1] interest in *this* proceeding is adequately represented by the company, which has the identical interest in not only avoiding arbitration, with its attendant risk of voiding the Hanford agreement, but also in proceeding to arbitration, if necessary, in a location where Local 703 may participate so that the rights and duties of the company

with respect to both locals can be effectively determined. Clearly, then, the district court erred in this portion of its analysis by looking solely to the consequences of the substantive outcome of an arbitration hearing conducted in Local 703's absence.

*Id.* at 622 (emphasis in original).

In *New England Patriots Football Club, Inc. v. University of Colorado,* 592 F.2d 1196 (1st Cir.1979), the Patriots attempted to enjoin the University of Colorado from employing a football coach who had been working for the Patriots. The University attempted to defend by noting that the coach was an indispensable party. In response to the University's claim that because of possible divergent interests, the University might omit points that the coach would have made, the First Circuit simply replied: "More important, on the single issue in this case, we perceive no different interests." *Id.* at 1201. *See also Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 636 (1st Cir.1989) (holding that absent party's interest prejudiced because named party would not be able to protect the absent party's interests).[10]

Further, this action charges interference with a contract by the Red Wings, not a breach of contract by Kozlov. Although Kozlov will undoubtedly be affected by the result of this litigation, he will only be affected as a result of the Court's determination of the rights and obligations of the Red Wings. Moreover, the fact that Kozlov's interests will be affected by the result of the instant litigation is not sufficient, by itself, to result in a determination of indispensability. *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.,* 564 F.2d 816, 820 (8th Cir. 1977) (person does not become indispensable to an action to determine rights under a contract simply because that person's

---

**9.** Moreover, though not dispositive, Kozlov's counsel in the state court action is the Red Wing's counsel in the instant action.

**10.** For a similar discussion of adequate representation in the context of a Rule 19(a)(2)(i) discussion, *see Rochester Methodist Hosp. v. Travelers Ins. Co.,* 728 F.2d 1006, 1016 (8th Cir. 1984) (holding that interests of Department of Health and Human Services adequately protect-

ed by United States Attorney who was representing an insurance company in a defense to a suit by a hospital); *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship & Training Committee,* 662 F.2d 534, 538 (9th Cir. 1981), *cert. denied,* 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982) (holding that employers in Title VII action adequately protected by joint apprenticeship and training committee).

rights or obligations under an entirely separate contract will be affected by the result of the action).[11]

Another consideration is the possible prejudice to the Hockey Club and the Red Wings by Kozlov's absence.[12] In analyzing this issue, the courts have generally asked whether the named parties would be subject to inconsistent obligations or multiple lawsuits as a result of the absent party's absence. 3A *Moore's Federal Practice* § 19.07[2]. In this case, the named parties have little fear of incurring inconsistent obligations because of Kozlov's absence. As the state court injunction reaches only the NHL, it will not affect the parties currently before this Court. Further, any fear of inconsistent obligations in the future must be considered "mere theoretical possibilities" which are given no effect in a Rule 19(b) analysis. *See Pasco Int'l, Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505 (7th Cir.1980); 3A *Moore's Federal Practice* § 19.07–2[2].[13] Therefore, the Court finds that the first factor leads to the conclusion that Kozlov is not an indispensable party in that his absence will not cause prejudice either to his or the named parties' interests.

On the other side of the balancing equation, the Court must now consider whether the Hockey Club will have an adequate remedy if the action is dismissed for nonjoinder. If this action is dismissed, the Hockey Club will have the option of waiving the lack of personal jurisdiction in state court and joining the action in that forum. Therefore, diluted to its essence, the narrow inquiry before the Court is whether "in equity and good conscience" the Court finds that any prejudice to Kozlov because of his absence in this litigation is sufficient to compel the Hockey Club to relinquish its statutory right to be heard in a federal court. The Court finds that it is not.

First, the Court repeats that there will be little, if any, prejudice to Kozlov's or the named parties' interests were Kozlov not joined in this lawsuit. Second, the Court observes that the Hockey Club has a statutory right to jurisdiction in a federal forum. When Congress has used its constitutional authorization to bestow upon the federal courts jurisdiction over a specific category of cases, a court should not hastily strip a party of this jurisdiction. *See England v. Louisiana State Bd. of Med. Exam.*, 375 U.S. 411, 84 S.Ct. 461, 464–65, 11 L.Ed.2d 440 (1964). *See also Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir.1982) (if valid jurisdiction based on diversity, judicial economy and convenience alone should not dictate dismissal).

It does seem to this Court that the dispute in this case is, indeed, one which is particularly suited to federal jurisdiction. As noted, the essence of the dispute is between an American hockey team and a Russian hockey team and will involve issues concerning an international agreement

---

**11.** As noted by the Advisory Committee:

> It is true that an adjudication between the parties before the court may on occasion adversely affect the absent person as a practical matter, or leave a party exposed to later inconsistent recovery by the absent person. These are factors which should be considered in deciding whether the action should proceed, or should rather be dismissed; but they do not themselves negate the court's power to adjudicate as between the parties who have been joined.

Rule 19, Notes of Advisory Committee on Rules.

**12.** The named parties have not argued, either in their written briefs or oral argument, that they would be prejudiced by the absence of Kozlov.

**13.** The only conceivable problem with inconsistent obligations would be a future suit by Kozlov to enforce his contract with the Red Wings in case the Court granted the Hockey Club's requested injunction. However, such a suit would be successful only to the extent that there exists a valid contract between Kozlov and the Red Wings. If there is a valid contract between Kozlov and the Red Wings, however, any injunction directed at the Red Wings would also bind Kozlov. Fed.R.Civ.P. 65(d) provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Therefore, Kozlov, as an employee of the Red Wings, would, for the period of the injunction, have no right to play hockey for the Red Wings. Therefore, the Red Wings could not be accused of depriving Kozlov of his contractual right to play hockey.

between the NHL and the IIHF. The Russian Hockey Club has indicated its discomfort with having to litigate this case in the home state court of the American hockey team. While this Court itself certainly intimates no view that the state court would in any way be biased or prejudiced against the Russian Hockey Club, it does seem that the issues and dynamics of this case, particularly given the sensitivities of the Hockey Club, are distinctly suited for federal court and go to the essence of the policies underlying federal diversity jurisdiction.

Therefore, as the prejudice to Kozlov and the named parties because of Kozlov's absent is slight, and the prejudice to the Hockey Club if denied a federal forum is significant, the Court finds that, on balance, Kozlov is not an indispensable party within the meaning of Rule 19(b). The Court will retain diversity jurisdiction over this matter.

## II. ANTI-INJUNCTION ACT

■ The Red Wings next claims that the Anti-Injunction Act forbids this Court from issuing an injunction which interferes with a state court order. That Act reads:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.[14] Unless one of the three exceptions applies, this Act absolutely prohibits a federal court from intervening in a pending state court proceeding. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705 (6th Cir.1972); *Roth v. Bank of Commonwealth*, 583 F.2d 527, 533 (6th Cir.1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

The purpose of the Act is to "prevent needless friction between the state and federal courts." *Atlantic C.L.R. Co. v.*

*Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). Thus, any doubts as to the applicability of the Act "should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." *Id.* 90 S.Ct. at 1748.

The Court agrees with the Red Wings that the three exceptions do not apply in this case. The Court has not found, and the Red Wings has not proposed, a federal law that expressly authorizes the Court to grant the instant injunction. Thus, this exception is inapposite.

The "necessary in aid of its jurisdiction" exception has typically been applied either in *in rem* proceedings or in cases in which the state court proceeding would interfere with ongoing federal control of a case, such as the federal court monitoring of school desegregation. *Garcia v. Bauza–Salas*, 862 F.2d 905, 909 (1st Cir.1988).[15] Again, neither of these situations applies in this case.

Finally, the "protect or effectuate judgment" exceptions applies only when the federal court has already adjudicated an issue and a state court subsequently attempts to rehear or block the effect of this adjudication. *Id.* at 910. As no judgment has yet been entered in federal court, this exception is clearly inapplicable. In sum, none of the three exceptions applies to this case.

Therefore, the Court need only determine whether the Act applies to the facts of this case. If it does, the Act will prevent the Court from granting an injunction. If it does not, the Court will not be barred from granting the requested injunction.

---

**14.** Read literally, this statute would apply only when a federal court enjoins a state court, not a party to a state court action. However, this reading would nullify the statute because an injunction against a party to a state court action would have the same effect as enjoining the state court directly. Therefore, this statute also applies when a federal court attempts to enjoin a party to a state court proceeding. 17 Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4222 (2d ed. 1988).

**15.** The Revision Notes claim that this exception simply clarifies the recognized power of the federal courts to stay proceedings in state cases removed to the district courts. 28 U.S.C. § 2283, Revision Notes.

■ A review of the relevant case law indicates that the Act does not apply in this case. The Act does not bar suits by third parties for an injunction which would nullify an earlier state court proceeding if that third party is a "stranger" to the state court proceeding. *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 59 S.Ct. 526, 527, 83 L.Ed. 771 (1939). A third party is a stranger to a state court injunction if he is a nonparty to the state court action and is not bound to the result of the injunction by collateral estoppel. *Munoz v. County of Imperial*, 667 F.2d 811, 814–15 (9th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982) ("*Hale, Chase* [*Nat. Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894], and *Montana* [*v. U.S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210] all show that 'strangers' are non-parties who are not bound to previous litigation by collateral estoppel"). To be collaterally estopped, the Hockey Club would have to be in privity with the NHL. Therefore, in this case, the Act would apply only if the Hockey Club were in privity with the NHL.

It is clear, however, that the NHL and the Hockey Club are not privies. First, the interests of the two are divergent, if not actually diametrically opposed.[16] The NHL is constrained by the IIHF which mandates that it honor any contract between Kozlov and the Hockey Club that is valid on its face. Being bound by this agreement, it would presumably not sanction a valid contract between the Red Wings and Kozlov. Therefore, to the extent that it does not wish to violate the IIHF contract, the NHL has an interest in seeing that Kozlov does not breach his contract with the Hockey Club. However, the NHL certainly has no interest in demonstrating that the contract between Kozlov and the Hockey Club was valid, i.e., that it was not (a) arrived at through duress, (b) breached by the Hockey Club, or (c) void per Kozlov's release. Yet this is the precise interest of the Hockey Club.

Additionally, the formal ties linking the NHL and the Hockey Club are negligible. Based on a review of the record, the only apparent nexus between the parties is their membership in the IIHF. It is patently absurd to impute privity from membership in the same loosely bound international sports organization.

Finally, the Hockey Club had no control over the state court action. Though a named party, the state court dismissed the Hockey Club for lack of personal jurisdiction.[17]

Therefore, as the NHL and the Hockey Club are not in privity, the Hockey Club is a stranger to the state court proceeding and thus not barred by the Anti–Injunction Act.

## CONCLUSION

The Court summarizes as follows its reasons for hearing the instant motion: Kozlov will not be prejudiced by his absence in this litigation; the Hockey Club might be prejudiced if the Court were to dismiss this case; the Hockey Club was a stranger to the state court injunction and therefore is unaffected by the Anti–Injunction Act; the Hockey Club has not yet had the opportunity to argue its position; and, the true parties in interest in this case are the Hockey Club and the Red Wings. Having jurisdiction, the Court will consider whether to grant the Hockey Club's request for a preliminary injunction.

IT IS HEREBY ORDERED that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

---

**16.** During the March 9, 1992 hearing, the Court asked counsel for the NHL whether it had a position on the Hockey Club's motion for injunction. The NHL, through counsel, responded that it believed that the state court's injunction should not be disturbed.

**17.** The Court notes that the Hockey Club did not waive personal jurisdiction; if it had, it would have had greater control over the state court proceeding. However, the Hockey Club had the right to assert lack of personal jurisdiction.

Were the Court to ascribe privity based on the fact that the Hockey Club could have joined the state court proceeding but chose not to, it would be punishing the Hockey Club for making a valid jurisdictional argument. Moreover, even if the Court were to find that the Hockey Club could have had control over the lower court proceeding, this alone would be insufficient to find that the NHL and the Hockey Club are privies.

IT IS FURTHER ORDERED that the Anti–Injunction Act, 28 U.S.C. § 2283, does not prevent the Court from considering the Hockey Club's motion for preliminary injunction.