USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1243 UNITED EGG PRODUCERS, ET AL., Plaintiffs, Appellees, v. DEPARTMENT OF AGRICULTURE OF THE COMMONWEALTH OF PUERTO RICO, ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Watson,* Senior Judge. ____________ ____________________ Edgardo Rodriguez-Quilichini, Assistant Solicitor General, with _____________________________ whom Carlos Lugo-Fiol, Solicitor General, and Jacqueline Novas-Debien, ________________ _______________________ Acting Deputy Solicitor General, were on brief for appellants. Philip C. Olsson with whom Olsson, Frank and Weeda, Enrique M. _________________ _________________________ __________ Bray and Nachman, Santiago, Bray & Guillemard were on brief for ____ _______________________________________ appellees. ____________________ March 6, 1996  ____________________ *Of the United States Court of International Trade, sitting by designation. ____________________ CAMPBELL, Senior Circuit Judge. Defendants-appellants the Puerto Rico ____________________ Department of Agriculture and its former Secretary, Alfonso D vila, in his individual and official capacities, challenge an order of the United States District Court for the District of Puerto Rico granting a permanent injunction against the enforcement of Puerto Rico Market Regulation Number 3, section X(F). Section X(F) requires that eggs imported into Puerto Rico from the mainland United States be stamped with the two-letter postal code of the state of origin. The district court ruled in favor of plaintiffs-appellees United Egg Producers and Instituto Puertorrique o de Carnes, Inc.,1 after determining that section X(F) imposed a substantial burden on interstate commerce contrary to the Dormant Commerce Clause.  I. The Egg Products Inspection Act and Section X(F) I. The Egg Products Inspection Act and Section X(F) Although not a state, the Commonwealth of Puerto Rico is subject to the constraints of the Dormant Commerce Clause to the same degree as are the states. Trailer Marine Transp. Corp. v. Rivera Vazquez, _____________________________ _______________ 977 F.2d 1, 7 (1st Cir. 1992). In the proceedings below, the district court ruled that the regulation in question, Puerto Rico Market Regulation Number 3, section X(F), was an impermissible burden on interstate commerce hence invalid under the Dormant Commerce Clause.  ____________________ 1United Egg Producers is an Atlanta, Georgia, national trade association whose members include egg producers in every state. Instituto Puertorrique o de Carnes, Inc., is a San Juan, Puerto Rico, trade association representing Puerto Rican distributors of food products. 3 Section X(F) requires the labeling of eggs imported from elsewhere in the United States into Puerto Rico: Imported eggs to be marketed in Puerto Rico shall have the letters from the state of origin if produced in a state of the United States using the initials established by the United States Postal Service, . . . stamped on each egg, as established by the Egg Products Inspection Act (21 USC 1031, Section 23 b,2). Puerto Rico Market Regulation Number 3, section X(F). Section X(F) purports to have been promulgated in conformity with the Egg Products Inspection Act (EPIA), which provides that:  no State or local jurisdiction other than those in _____________________________________________ noncontiguous areas of the United States may require labeling ________________________________________ to show the State or other geographical area of production or origin. 21 U.S.C. 1052(b)(2) (emphasis supplied). Puerto Rico is, of course, one of the noncontiguous jurisdictions excepted from the statute's prohibition against egg-labeling.  This appeal presents two main questions: (1) whether section X(F) of Puerto Rico's Market Regulation Number 3 was, in effect, Congressionally authorized, so as to be beyond the reach of the constraints of the Dormant Commerce Clause; and (2) if the Dormant Commerce Clause is applicable, whether section X(F) impermissibly burdens interstate commerce. We address each of these issues. II. Congressional Authorization II. Congressional Authorization The Commerce Clause provides that "Congress shall have Power . . . To regulate Commerce . . . among the several States." U.S. Const. art. I, 8, cl. 3. The Supreme Court has interpreted this 4 affirmative grant of authority to Congress as also establishing what has come to be called the Dormant Commerce Clause -- a self-executing limitation on state authority to enact laws imposing substantial burdens on interstate commerce even in the absence of Congressional action. See South-Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, ___ _______________________________ ________ 87 (1984). The Dormant Commerce Clause does not, however, apply to state or local regulations directly authorized by Congress. "It is . . . clear that Congress may 'redefine the distribution of power over interstate commerce' by 'permit[ting] the states to regulate the commerce in a manner which would otherwise not be permissible.'" Id. ___ at 87-88 (quoting Southern Pac. Co. v. Arizona ex rel. Sullivan, 325 _________________ ________________________ U.S. 761, 769 (1945)); see also White v. Massachusetts Council of _________ _____ _________________________ Constr. Employers, 460 U.S. 204, 213 (1983); New England Power Co. v. _________________ _____________________ New Hampshire, 455 U.S. 331, 340 (1982). Thus, state or local ______________ jurisdictions operating under "Congressional consent" are free to enact laws burdening interstate commerce.  The standard for finding Congressional consent is, however, high. Congressional consent to otherwise impermissible state regulation must be either "expressly stated," Sporhase v. Nebraska ex rel. Douglas, ________ _________________________ 458 U.S. 941, 960 (1982), or "made unmistakably clear," South-Central, _____________ 467 U.S. at 91. The state or local jurisdiction (in this case the Commonwealth of Puerto Rico) has the burden of demonstrating Congress' unmistakably clear intent to allow otherwise discriminatory regulations. Wyoming v. Oklahoma, 502 U.S. 437, 458 (1992). _______ ________ To determine if Congressional consent was extended here, so as 5 to authorize Puerto Rico's labeling regulation regardless of its impact on commerce, we begin by examining Congress' language. In section 1052(b)(2), Congress did not state affirmatively that noncontiguous jurisdictions could "require labeling to show the State or other geographical area of production or origin." Instead, Congress excepted "noncontiguous areas of the United States" including Puerto Rico, from the blanket prohibition it was placing upon egg- labeling in all other places. 21 U.S.C. 1052(b)(2). Read literally, 1052(b)(2) can be said to go no further than to exempt Puerto Rico from Congress' own egg-labeling ban. The exemption is consistent with intending to allow Puerto Rico to adopt only egg-labeling requirements that do not otherwise violate the Dormant Commerce Clause -- i.e., regulations justified by a legitimate state interest, such as to protect the health of its residents, that could not be met via nondiscriminatory alternatives.2  To be sure, the statutory exemption is perhaps susceptible to a reading going beyond the above. One can argue that as Congress had  ____________________ 2Before the enactment of 1052(b)(2), any egg-labeling requirements passed by the states would have been subject to Dormant Commerce Clause analysis and upheld only if they did not substantially burden interstate commerce or if the burden on interstate commerce was justified by a legitimate state interest. After the enactment of  1052(b)(2), states in contiguous areas of the United States were prohibited from enacting any egg-labeling requirements, regardless of whether it was possible to compose such a requirement in such a way as to withstand Dormant Commerce Clause scrutiny. In addition, in  1052(b)(2), Congress indicated a preference for Puerto Rico and other noncontiguous areas of the United States by specifically exempting them from its blanket prohibition on egg-labeling. 6 before it the whole subject of egg-labeling, its exemption of noncontiguous jurisdictions must be understood to signify, by implication, Congressional approval of any and all egg-labeling requirements in those places regardless whether justified or unjustified by Dormant Commerce Clause considerations. But this seems to us a more extreme reading than either the statutory language or legislative history necessitates.3 Absent, at least, an affirmatively stated grant of permission to noncontiguous jurisdictions of the United States to require egg-labeling, we are unable to conclude that appellants have met their burden of showing that Congress' intent to allow Puerto Rico to enact protectionist egg- labeling regulations was "unmistakably clear." See e.g., Maine v. ___ ____ _____ Taylor, 477 U.S. 131, 139 (1986) (holding that state statutes are ______ exempt "from the implied limitations of the [Commerce] Clause only when the congressional direction to do so has been 'unmistakably clear'"); South-Central, 467 U.S. at 90 (finding that "on those _____________ occasions in which consent has been found, congressional intent and  ____________________ 3The legislative history of 1052(b)(2) is silent on whether Congress intended to immunize regulations like section X(F) from Dormant Commerce Clause scrutiny. It is true that the United States Department of Agriculture, arguing in opposition to the exemption, stated that 1052(b)(2)'s "exemption would allow ... Puerto Rico ... to require eggs shipped from the continental United States to be labeled" and therefore recommended eliminating the exemption in order to "eliminate trade barrier labeling requirements." H.R. Rep. No. 1670, 91st Cong., 2nd Sess. (1970). We are, however, unsure what weight, if any, to accord to the Department's position, given that the Department did not expressly refer to the Dormant Commerce Clause and given that Congress decided to exempt noncontiguous jurisdictions from its prohibition on egg-labeling in spite of the Department's objection.  7 policy to insulate state legislation from Commerce Clause attack have been 'expressly stated'"). We agree with the district court that "[a]lthough the E.P.I.A. permits noncontiguous areas to impose a labeling requirement, the statute does not permit such a requirement to be imposed in a manner that discriminatorily burdens interstate commerce." III. Dormant Commerce Clause Analysis III. Dormant Commerce Clause Analysis Having determined that section X(F) was not Congressionally authorized in such a fashion as to exempt it from Dormant Commerce Clause scrutiny altogether, we turn to the question whether section X(F) violates the Clause. We must decide whether section X(F) discriminates against interstate commerce by disproportionately impairing out-of-state commerce, and, if so, whether Puerto Rico can justify such discrimination. Trailer Marine, 977 F.2d at 10-12. ______________ A regulation that discriminates against interstate commerce may be facially discriminatory or may be neutral on its face but discriminatory in effect. Pike v. Bruce Church, Inc., 397 U.S. 137, ____ __________________ 142 (1970). Here, the Puerto Rico Department of Agriculture has promulgated a regulation which imposes a burden on other United States jurisdictions -- namely, egg-labeling -- that is not imposed on Puerto Rico. The record amply supports the district court's finding that "if enforced, [section] X(F) would impose on mainland and foreign egg 8 producers significant costs not imposed on Puerto Rican producers."4 Thus, section X(F) facially discriminates against interstate commerce. Because section X(F) discriminates against interstate commerce, the burden falls on appellants to show that it "serves a legitimate local purpose" that could not be served "as well without discriminating against interstate commerce." Hughes v. Oklahoma, 441 ______ ________ U.S. 332, 336 (1979). Appellants argue that section X(F) serves a legitimate state interest in protecting the health of Puerto Rican consumers. They argue that imposing a labeling requirement on imported eggs will enable authorities to remove from supermarkets eggs produced in a geographic area known to be the source of an outbreak of salmonella poisoning. However, appellants failed to support this assertion with any evidence showing (1) whether there is a substantial problem with salmonella in eggs; (2) whether egg-labeling is an efficient way to trace contaminated eggs;5 (3) whether section X(F)  ____________________ 4The evidence produced below tended to show that section X(F) would increase the market price of eggs imported into Puerto Rico from other United States jurisdictions, to the advantage of locally- produced eggs. For example, the Vice President of Radlo Brothers, a company which exports eggs to Puerto Rico, testified that in order to comply with section X(F) he would have to purchase new machinery for each of his thirty-five locations from which he ships eggs to Puerto Rico. He further testified that such egg-labeling would hinder his ability to satisfy his other clients' emergency needs, because these clients would likely not accept labeled eggs.  5The utility of egg-labeling as a means of tracing contaminated eggs is not self-evident. Testimony by the Vice President of United Egg Producers described a process by which tainted eggs are traced back to the farm that produced them through the standard documentation already used by packers and producers. 9 was passed with the purpose of tracing contaminated eggs; and (4) whether eggs imported from elsewhere in the United States are more likely to be contaminated than eggs imported from other countries that need only be labeled "foreign." We therefore accept the district court's finding that appellants "did not offer evidence proving that the discriminatory burden of [section] X(F) is justified by any factor 'unrelated to economic protectionism.'" See New Energy Co. v. ___ ________________ Limbach, 486 U.S. 269, 274 (1988). We hold that section X(F) violates _______ the Dormant Commerce Clause, and affirm the order of the district court granting a permanent injunction against the enforcement of section X(F). So Ordered. So Ordered. ___________ 10