**GOYA DE PUERTO RICO
INC., Plaintiff,**

v.

**Neftali SANTIAGO, Individually and as Secretary of the Department of the Commonwealth of Puerto Rico, Defendant.**

No. Civ. 96–2214CCC.

United States District Court,
D. Puerto Rico.

March 30, 1999.

Marta Quiñones–Zambrano, for plaintiff.

Roberto Ruiz–Comas, for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This declaratory judgment action challenging the constitutionality of Articles IIIE(10)(i),[1] III(E)(11), IV(C)(1–5), VI, VIII(B) and IX(A)(B) contained in a regulation of the Puerto Rico Department of Agriculture is before us on an unopposed Motion for Summary Judgment filed by plaintiff Goya de Puerto Rico, Inc. (Goya) (**docket entry 86**).

After careful consideration of the exhibits and affidavits presented, the Court finds that Articles IV(C)(1–5), VIII(B) and IX(A)(B) are unconstitutional and that Article VI is in conflicts with federal law.

The following factual allegations are relevant to the resolution of the pending motion. Goya is a Puerto Rico corporation established since 1949. For the past twenty-five years, Goya has been both an Importer and canner of certain comestibles. It imports dry grains from various places including the Dominican Republic, Ecuador, Chile, Peru and Mexico. Pinto Beans, pink beans, navy beans, chick peas, roman beans, lima beans, pigeon peas ("Gandures"), red kidney beans, small white beans, black-eye beans, whole green beans, black beans and white kidney beans are among the dry grains that it imports to Puerto Rico. These, along with the pigeon peas, have been classified as "low-acid foods". Goya also buys and imports other low-acid foods (e.g. canned tomato paste from Chile and Ecuador; canned Guava shells, papaya chunks, grated coconut, coconut milk, coconut cream and Guava paste from the Dominican Republic; canned sardines from Peru; canned sliced, chunk and crushed pineapple from Thailand and the Philippines; and, canned codfish, octopus, sardines, squid and pimentos from Spain.)

The Food and Drug Administration (FDA) has adopted an extensive and detailed set of rules governing the manufacture of thermally processed low-acid foods that are placed in hermetically sealed containers. Under these regulations, all processors, both foreign and domestic, have to file with the FDA the processing information, including the conditions under which the manufacturer achieves commercial sterility ensuring that all microorganisms that pose a potential threat to the public have been eliminated. Under these regulations, foreign manufacturers that wish to conduct

---

**1.** We need not decide the constitutionality of this article for it was left without effect, per letter of Rafael Picó–Seda dated October 25, 1996. (Plaintiff's Motion to Dismiss, Exhibit X)

business within the United States have to register their establishments with the FDA. In return, they obtain a Food Establishment Registration Number (FCE). The FDA does not perform inspections on foreign facilities nor issues any kind of certificate attesting that the plant is in compliance with the laws and regulations administered by the FDA. The FDA does not, on its own initiative, inspect the Puerto Rican companies that import pigeon peas to the Island.

The Puerto Rico Department of Agriculture adopted a regulation known as Regulation Number Five that calls for the inspection and the exaction of an inspection fee on all pigeon peas imported either in dry or canned form. (Articles VIII(B) and IX(A)(B)). Article IV(C)(1–5) provides that the canning of imported pigeon peas shall be conducted under the direct supervision of a Department of Agriculture inspector.[2] The inspections are performed by the Puerto Rico Department of Agriculture personnel. They conduct **only** a review of the inventory of the canned pigeon peas and **only** check labels. Goya is then invoiced for those services. The cost of these inspections has to be paid to the Department by plaintiff. Failure to pay the inspection fees may lead to the suspension or cancellation of Goya's license to sell "gandures" in Puerto Rico. The Puerto Rico Department of Agriculture charged plaintiff one dollar per box of products. After Goya filed this lawsuit, the Department lowered that amount to twenty five cents per box.

Of all the grains imported by Goya, (either canned or in dry form) the only ones subject to the challenged inspection upon arrival to the Island are pigeon peas. Locally produced or grown pigeon peas are not subjected to the rigors of regulation number five or any other similar regulation.

Regulation number five (via article VI) also imposes certain labeling requirements to be met by importers. Every can of imported pigeon peas has to contain the name and address of both the canner and the importer. The name of the importer has to be preceded by the word or phrase "IMPORTER" or "IMPORTED BY" or "IMPORTED FOR". The word "IMPORTED" shall be printed in letters not smaller than a fourth of an inch in height. Also, every container of imported canned pigeon peas introduced or marketed in Puerto Rico must be identified with a label indicating in legible letters the name and address of the canner or person for whom the product has been canned in Puerto Rico and the name and address of the canner and of the importer.

## A. *Plaintiff's Challenge Under the Commerce Clause*

Plaintiff contends that Articles IV(C)(1–5), VIIIB and IX(A)(B) violate the Commerce Clause of the United States Constitution based on its alleged discriminatory purpose and effect.

The Commerce Clause of the United States Constitution vests upon Congress the power to regulate commerce between the states and with foreign nations. *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 2446, 91 L.Ed.2d 110 (1986). The main purpose of the Commerce Clause is to foster economic integration and prevent local interference with the flow of the nation's commerce. *Trailer Marine Transport Corp. v. Rivera Vázquez*, 977 F.2d 1, 8 (1st Cir.1992). However, that congressional authority has been interpreted to have a negative side to it. That "negative" or "dormant" aspect of the Commerce Clause prohibits States from advancing their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state. *Fort Gratiot Landfill v. Michigan*

---

**2.** Goya also has to pay the Department of Agriculture for these services. To that effect, the Department has adopted tables that set forth the different rates to be paid for such supervisory services.

*Department of Natural Resources,* 504 U.S. 353, 112 S.Ct. 2019, 2023, 119 L.Ed.2d 139 (1992). *See e.g., New Energy Company of Indiana v. Limbach,* 486 U.S. 269, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988). Albeit not a federated state, Puerto Rico is subject to the limitations imposed by the Commerce Clause. *United Egg Producers v. Department of Agriculture,* 77 F.3d 567, 569 (1st 1996).

Federal courts have commonly adopted a two prong test to resolve challenges to state regulation based on the Commerce Clause. *Starlight Sugar v. Soto,* 909 F.Supp. 853, 858 (D.P.R.1995). Under that analysis the court must first determine if the statute is discriminatory or not. *Maine v. Taylor,* supra, at 2447.

■ Statutes or state regulations that specifically impose taxes on out-of-state competitors have traditionally been considered discriminatory. *West Lynn Creamery Inc. v. Healy,* 512 U.S. 186, 114 S.Ct. 2205, 2211, 129 L.Ed.2d 157 (1994). Discrimination also exists when the statute gives economic protection to in-state entities at the expense of the out-of-state ones. *Starlight Sugar v. Soto,* supra. at 858. A statute can be deemed discriminatory based on either its purpose or effect. *Bacchus Imports Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 3054, 82 L.Ed.2d 200 (1984).

■ Once it is determined by the trial court that the challenged statute discriminates against interstate commerce, a more stringent scrutiny is warranted. *Starlight Sugar v. Soto,* 114 F.3d 330, 331 (1st Cir. 1997). In those instances, the state has to meet two requirements. First, it must prove that the statute serves a legitimate local interest unrelated to economic protectionism and second, that such local interest

cannot be served through non-discriminatory means. *Davrod Corp. v. Coates,* 971 F.2d 778, 787 (1st Cir.1992). If the challenged statute has a discriminatory purpose or effect the only remaining question is whether it somehow can be justified. *Trailer Marine Transport Corp., supra,* at 11.

A less demanding scrutiny is applied in those cases where the court concludes that the perused regulation is non-discriminatory in nature. In those instances a more lenient test is applied. *Fireside Nissan, Inc. v. Fanning,* 30 F.3d 206, 218 (1st Cir.1994). Under that analysis, the court balances the incidental effects that such statute imposes on interstate commerce against the benefits that it provides to the local interests. *Starlight Sugar, supra.,* at 858. In sum, the burden upon interstate commerce cannot be excessive in comparison to the putative local benefits. *Maine, supra,* at 2447.

■ We find that Articles IV(C)(1–5), VIII(B) and IX(A)(B) contained in Regulation Number Five discriminate against interstate commerce. They facially discriminate against interstate commerce for they impose significant costs on pigeon pea importers which are not borne by their local counterparts. *United Egg Producers, supra,* at 571.[3] Whereas Regulation Number Five calls for the Inspection of all "gandures" to be sold in Puerto Rico, in practice only those that are brought from abroad are inspected.[4] The statute renders the locally produced pigeon peas immune to its requirements of inspection, supervision and attendance fee. In its effect, Regulation Number Five singles out imported "gandures" because of their place of origin and benefits the local producers by burdening their out-of-state competitors. However, the place of origin,

---

3. "The record amply supports the district court's finding that if enforced, section X(F), would impose on mainland and foreign egg producers significant costs not imposed on Puerto Rican producers. Thus section X(F) facially discriminates against interstate commerce."

4. In his deposition the Department of Agriculture Secretary stated that none of the provisions contained in the challenged regulation apply to locally produced pigeon peas. Defendant's deposition at. p. 32–33.

by itself, does not justify a discriminatory treatment of out of state goods. *Used Tire International, Inc. v. Manuel Diaz Saldana*, 155 F.3d 1 (1st Cir.1998) *See* also *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 2537, 57 L.Ed.2d 475 (1978).

"Even according the regulation every presumption of validity, no reasonable conjecture can here overcome the calculated discrimination against foreign commerce." *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 380, 59 S.Ct. 526, 83 L.Ed. 771 (1939). The defendant has failed to either demonstrate that the challenged regulation serves a legitimate local interest or that it cannot be attained through non discriminatory means. Although the Department of Agriculture did not file an opposition to the Motion for Summary Judgment, its Secretary, during the taking of his deposition, surmised that perhaps the Department did not protect the consumer's health and safety in relation to products such as beans or chick peas because they came mostly from mainland FDA inspected plants as opposed to pigeon peas produced in foreign countries which do not have such strict regulations. No evidence was presented, however, that could indicate that the Department's fears are nothing more than mere conjectures. *Hale, supra*, at 380. Goya imports dried chick peas from Mexico; pinto beans, black beans and black eye peas from Chile and Peru yet, none of these grains are subject to inspection and payment of attendance fees locally. No evidence has been presented that could support a conclusion that imported pigeon peas pose a real threat to the health and safety of the Puerto Rico people.

Defendant has also failed to establish that there are non-discriminatory means to further its goals. "State restraints of the national market, even under the guise of local health and safety pursuits, are also untenable if a less burdensome, nondiscriminatory alternative is available." *García v. Bauzá Salas*, 686 F.Supp. 965, 972 (D.P.R.1988). The Department of Agriculture could have adopted the same safety measures that it implements with regard to the locally grown pigeon peas. It did not. The Puerto Rico Department of Agriculture has not produced any evidence that may indicate how the health and safety of the Puerto Rico people may be affected in the absence of such a burdensome statute. Safety concerns cannot be raised in the abstract. *Hale, supra*, at 380. Simply stated, the Puerto Rico Department of Agriculture has not proven that its alleged local interest may be attained through non-discriminatory measures.

It cannot be reasonably concluded that the inspections required appropriately serve the ends for which they were allegedly adopted. The inspections performed by the Commonwealth's Department of Agriculture personnel are limited to checking labels and box counting. Those inspections do not require the performance of laboratory tests, sampling or any other scientific analysis that might reveal the presence of harmful or potentially dangerous substances. Defendant has not established the need for the challenged regulation given the absence of a showing that:

(1) there is a substantial problem with contaminated or harmful imported pigeon peas.

(2) the inspections required under the regulation are an effective tool in detecting contaminated or dangerous imported pigeon peas.

(3) regulation number five was approved with the intention of detecting contaminated or harmful imported pigeon peas.

(4) pigeon peas imported from outside of Puerto Rico are more likely to be contaminated than the pigeon peas grown in Puerto Rico.

(5) the canners of imported pigeon peas do not follow FDA guidelines during the canning procedures.

See *United Egg Producers v. Department of Agriculture, supra* at 571.

## B. *Plaintiff's Challenge Under the Federal Food, Drug and Cosmetic Act*

Under certain circumstances, federal law will take precedence over state regulation. When that occurs it is said that federal law has pre-empted state law. *Black's Law Dictionary,* West Publishing Co., Fifth Ed., p. 1060.

■ It is the Supremacy Clause of Article VI of the United States Constitution that vests upon Congress the power to pre-empt state regulation. *Louisiana Public Service Commission v. F.C.C.,* 476 U.S. 355, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986); *Cipollone v. Liggett Group Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) The critical inquiry in any preemption controversy is always whether Congress intended federal regulation to supersede state law. *Louisiana Public Service Commission v. F.C.C.,* supra at 1899. The trial court must ascertain if Congress intended to set aside any state law when it enacted a federal statute. *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 67 (1st Cir.1997) The crucial point is to determine if Congress had an intent to preempt state regulation. *Pedraza v. Shell Oil Co.,* 942 F.2d 48, 51 (1st Cir.1991) ("Preemption boils down to a matter of congressional intent.").

■ There are various situations where the preemptive congressional intent may be found. One of those is when Congress has voiced its preemptive intent through explicit preemption language. *Philip Morris Inc.,* supra at 67. However, it is common for Congress not to use such explicit language. When Congress has opted for the latter, the court must consider the federal statute's 'structure and purpose',

or nonspecific statutory language, to ascertain if there is a clear, but implicit, preemptive intent. *Id.* at 67. State regulation will be implicitly preempted when one of the following occurs: (1) the scheme of federal regulation, although not expressly preemptive, is so pervasive as to generate an inference of complete federal dominance; (2) federal law and state legislation are in direct conflict. *Tart v. Commonwealth of Massachusetts,* 949 F.2d 490, 500 (1st Cir.1991). Conflict between federal and state law arise when it would be "physically" impossible to comply with both federal and state law. *Philip Morris,* supra at 68. There is also conflict when the state law constitutes an obstacle to the full accomplishment of the purposes and objectives attained by the federal statute. *Pedraza v. Shell Oil Co.,* supra at 51.

In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act (FFDC). 21 U.S.C. Sec. 301 et seq. Through the FFDC the federal government intended to protect the public's health and safety from deleterious and adulterated articles. *U.S. v. Walsh,* 331 U.S. 432, 434, 67 S.Ct. 1283, 91 L.Ed. 1585 (1947).

Pursuant to that statute, any article in package form is considered to be misbranded unless "it bears a label containing the name and place of business of the manufacturer, packer, or distributors."[5] The Federal Food, Drug, and Cosmetic Act was amended in 1990. In said amendment, Congress specifically forbad the states from adopting any labeling requirement different from the ones set forth in the statute. *See* 21 U.S.C. Sec. 343–1(a)(2).[6]

---

**5.** 21 U.S.C. § 343 establishes that: "A food shall be deemed to be misbranded—... (e) If in the package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor...."

**6.** 21 U.S.C. § 343–1(a)(2) reads as follows: "Except as provided in subsection (b) of this section, no State or political subdivision of a

State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—... (2) any requirement for the labeling of food of the type required by section 343(c), 343(e) or 343(i)(2) of this tide that is not identical to the requirement of such section...." (Emphasis provided.)

■ The Puerto Rico Department of Agriculture's actions run contrary to federal law. While federal law grants businesses the discretion to choose whether to include on the label the name and place of business of the importer, packer or distributor; article VI demands that the name and address of both the canner and the importer be printed. The Department of Agriculture has exceeded its faculties under federal law. It exacts from importers more information than what is elicited under the Nutritional Labeling Act. The Commonwealth of Puerto Rico by way of the Department of Agriculture cannot go beyond the terms of the Act.

The Puerto Rico's Department of Agriculture overstepped its authority to regulate an aspect of the food industry. When it comes to packed food that will make it into interstate commerce, the Nutritional Labeling and Education Act governs what must be included in the labels. The federal government was quite clear about the kind of information that state labeling laws could require. Therefore, this Court finds that Article VI(K) and (J) contravene the terms of 21 U.S.C. 343–1(a)(2).

For purposes of this case, we need not resolve plaintiff's challenge under the General Agreement of Tariffs and Trade Act for it lacks standing. *See* 21 U.S.C. sec. 3512(A), or the Equal Protection Clause.

In view of the foregoing, the Motion for Summary Judgment filed by Goya de Puerto Rico Inc. (**docket entry 86**) is hereby GRANTED. The Court finds that Articles III(E)(11), IV(C)(1–5) VIII(B) and IX(A)(B) contained in Regulation Number Five contravene the United States Constitution and that Section VI conflicts with the Nutritional Labeling and Education Act of 1990.

SO ORDERED.