**GOYA DE PUERTO RICO, INC., Plaintiff,**

v.

**Miguel O. MUÑOZ, Individually and as Secretary of the Department of Agriculture, Defendants.**

**No. Civ. 00–1291(SEC).**

United States District Court, D. Puerto Rico.

April 25, 2000.

Marta Quiones–Zambrana, Cancio Nadal Rivera & Diaz, San Juan, PR, for plaintiff.

Francisco A. Ojeda–Diez, Department of Justice of P.R., Federal Litigation Division, San Juan, PR, for defendants.

*DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF JURY TRIAL REQUESTED*

CASELLAS, District Judge.

## OPINION AND ORDER

Pending disposition before the Court is co-defendants Miguel Muñoz–Muñoz and Andrés Rosado–Padilla's "Motion to Dismiss Under F.R.Civ.P. 12(b)(6)", **(Docket # 15)**, along with plaintiff's opposition and memorandum of law. **(Docket # 18)**. Also before the Court in a related matter is the co-defendants' motion for reconsideration, **(Docket # 21)**, and plaintiff's corresponding opposition, **(Docket # 26)**.

For the reasons stated below, the co-defendants' motion to dismiss, **(Docket # 15)**, is **GRANTED** and therefore, the co-defendants' motion for reconsideration of this court's order extending the temporary restraining order, **(Docket # 21)**, becomes **MOOT**. Pursuant to this opinion and order, the above-captioned case will be **DISMISSED**.

## 1. Procedural Facts

This case was filed on March 7, 2000. (Docket # 1). Plaintiff Goya de Puerto Rico, Inc. (hereinafter "Goya") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. It is involved in the business of processing, packaging, and selling pigeon peas ("gandules") in Puerto Rico. Plaintiff seeks in the complaint a declaratory judgment and injunctive relief against defendants Miguel Muñoz–Muñoz, personally and as Secretary of Agriculture of the Commonwealth of Puerto Rico, and Andrés Rosado–Padilla, personally and as Assistant Secretary for the Special Services Area of the Department of Agriculture; declaring the unconstitutionality of Regulation # 5 of the Commonwealth's Department of Agriculture and enjoining co-defendants from further applying and enforcing said regulation. Jurisdiction was properly invoked pursuant to 28 U.S.C.A §§ 1331, 1343, and venue was invoked pursuant to 28 U.S.C.A. § 1391.

Regulation # 5 of the Department of Agriculture governs the canning and importation of pigeon peas into the Commonwealth of Puerto Rico. It imposes certain license and inspection requirements upon the producers and importers of pigeon peas. Goya alleges in the complaint that Regulation # 5 is a protectionist measure passed by the Commonwealth's legislature on or about 1952, to help the local growers of pigeon peas. Allegedly, at that time there were many farmers dedicated to growing pigeon peas, and the harvest was large and satisfied the local demand. (Docket # 1, Complaint ¶ 5).

On October 4, 1996, Goya filed a civil action against the Commonwealth's Secretary of Agriculture, challenging the constitutionality of Regulation # 5. *See Goya De Puerto Rico, Inc. v. Neftali Santiago, et. al.,* 59 F.Supp.2d 274 (D.P.R.1999). On March 30, 1999, the Hon. Carmen C. Cerezo, ruling upon Goya's *unopposed* motion for summary judgment in that case, entered judgment for the plaintiff declaring Articles III(E)(11), IV(C)(1–5), VIII(B), and IX(A)(B) of Regulation # 5 unconstitutional and holding that Article VI of said regulation was in conflict with federal law.

However, Goya alleges in the complaint at bar, that the Secretary of Agriculture attempted to circumvent Judge Cerezo's judgment in *Goya De Puerto Rico, Inc. v. Neftali Santiago, et. al.,* 59 F.Supp.2d 274 (D.P.R.1999) (hereinafter *"Goya I"*), by enforcing Section VII of Regulation # 5, which requires that every can of pigeon peas introduced or marketed in Puerto Rico be embossed in any of its ends with a legible code mark specifying whether the cans contained imported pigeon peas, imported pigeon peas canned in Puerto Rico, or canned pigeon peas produced in Puerto Rico. (Docket # 1, Complaint ¶¶ 15–17).

Plaintiff filed the complaint in the case at bar, (hereinafter *"Goya II"*), after co-defendant Rosado–Padilla, Assistant Secretary of Agriculture, notified Goya that

the Department of Agriculture intended to enforce those sections of Regulation # 5 left in effect by the Hon. Judge Cerezo in *Goya I,* including Section VII of Regulation # 5, cited above. (Docket # 1, Complaint ¶¶ 13–18). Goya did not comply with these provisions of Regulation # 5 and on January 20, 2000 the Secretary of Agriculture issued a detention order against Goya for 70 cans of pigeon peas marketed under the "El Jibarito" brand, because the label in the cans did not indicate the place of origin of the pigeon peas. (Docket # 1, Complaint ¶ 34, Exhibit # 6). On February 24, 2000, another detention order was issued against Goya for 7,729 cans of pigeon peas because the cans were not subjected to an inspection of grading pursuant to Articles V(A) and VIII(A) of Regulation # 5. (Docket # 1, Complaint ¶ 36, Exhibit # 8). Also on February 24, 2000 Mr. Rosado–Padilla notified Goya that the pigeon peas brand "El Jibarito" was unauthorized to be marketed for human consumption within the Commonwealth of Puerto Rico due to Goya's repeated non-compliance with the provisions of Regulation # 5 of the Department of Agriculture. (Docket # 1, Complaint ¶ 36, Exhibit # 5).

These events triggered the filing of this case and along with the complaint, Goya filed a motion for a temporary restraining order, (Docket # 2), and a motion for preliminary injunction. (Docket # 4).[1] On March 7, 2000, this Court denied Plaintiff's motion for a temporary restraining order and notified the parties that it would hold a preliminary injunction hearing on March 29, 2000. (Docket # 6). On March 9, 2000 Goya moved for reconsideration of the Court's Order denying the temporary restraining order, (Docket # 7), and on March 21, 2000, the Court granted Plaintiff's motion for reconsideration, after the defendants failed to timely file an opposition. (Docket # 10).

On March 24, 2000, co-defendants Miguel Muñoz–Muñoz and Andrés Rosado–Padilla, in their official capacities, filed a motion to dismiss under the provisions of Fed.R.Civ.P. 12(b)(6), on grounds of claim preclusion. (Docket # 15). On March 29, 2000 the Court held a preliminary injunction hearing where the Court heard argument for both parties on this issue. In addition, the Court heard the testimony of Ms. Luz Damaris Rosario, Goya's Quality Control Manager, and entered to consider the merits of the complaint at bar. (Docket # 17, Minutes of Proceedings). The Court extended the temporary restraining order until April 10, 2000 and continued the preliminary injunction hearing until that date. Also, the Court ordered Plaintiff to file an opposition to co-defendants' motion to dismiss. (Docket # 17). Plaintiff filed said motion on April 4, 2000. (Docket # 18).

In its opposition, Goya argued that the above-referenced complaint is not barred by *res judicata* on two grounds: (1) That the cause of action in the case of *Goya I,* is allegedly not sufficiently identical to the cause of action in the above-referenced case (*Goya II* ); and (2) That even if the claims in both cases were identical, the Court should apply an exception to the doctrine of claim preclusion because this case presents unusual hardship to the plaintiff.

On April 5, 2000 the Court ordered the continuance of the preliminary injunction hearing that was set for April 10, 2000. The continuance was until April 19, 2000. The temporary restraining order was to remain in effect until that date. (Docket # 19). On April 7, 2000 co-defendants Miguel Muñoz–Muñoz and Andrés Rosado–Padilla filed a motion for reconsideration of this Court's Order extending the temporary restraining order. (Docket # 21). The co-defendants argued that the extension of the temporary restraining order

---

**1.** Accompanying Plaintiff's motions was a memorandum of law in support thereof.

(Docket # 2).

beyond ten days after its initial issuance, was not within the Court's powers under Fed.R.Civ.P. 65(b). In addition, co-defendants argued that the conversion of the temporary restraining order into a *de facto* preliminary injunction was not warranted because the plaintiff did not comply with all the elements for the issuance of a preliminary injunction. That is, the defendants have not had their full day in Court, and in addition, Plaintiff has not shown good cause for the issuance of the temporary restraining order, or its extension, because the evidence presented to this Court at the March 29, 2000 hearing did not show any imminent danger posed to Plaintiff.

Plaintiff opposed co-defendants' motion and argued that the Court was empowered to grant a continuance because the preliminary injunction and temporary restraining order hearings were consolidated and commenced within the time frame specified by Fed.R.Civ.P. 65(b). (Docket # 26). In addition, Plaintiff argued that the extension in this case is warranted because it is suffering irreparable damage as the cans of pigeon peas it produces are detained by the Department of Agriculture.

## 2. Analysis of Applicable Law

### a. Motion to Dismiss Standard

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

While in ruling upon a motion to dismiss the court must ordinarily ignore matters outside the pleadings, *see, e.g., Maldonado v. Dominguez*, 137 F.3d 1, 6 (1st Cir.1998) (in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, the district court must ignore matters outside the pleadings); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997) (same); *Vega–Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 177 (1st Cir. 1997) (same), the court may consider any documents which are referred to in the nonmovant's pleadings and which are central to his or her claim. *Cf. Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998).

### b. *Res Judicata* /Claim Preclusion

██ The First Circuit has established that "[f]ederal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court." *Apparel Art International, Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 582–83 (1st Cir. 1995). Since the first judgment which co-defendants aver that precludes plaintiff from re-litigating this case was rendered by a federal court, it is the federal res judicata rules which govern the instant case.

██ Under the federal rule of res judicata, also referred to as claim preclusion, a valid and final personal judgment is conclusive of a claim. If the judgment is for the plaintiff, the claim is extinguished and merged in the judgment; if the judgment is for the defendant, the plaintiff is barred from reasserting the claim. *Restatement*

*of Judgments 2d* § 17. Claim preclusion applies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. Sac County,* 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *see also Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Apparel Art International,* 48 F.3d at 583. In addition, "[o]nce there has been an adjudication on the merits, . . . all claims which are 'part of the same cause of action' are extinguished, whether or not actually asserted in the original action." *Kale v. Combined Ins. Co. of America,* 924 F.2d 1161, 1164 (1st Cir.1991). As a consequence of that doctrine, "when a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related . . . claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists." *Kale,* 924 F.2d at 1165.

■ The policy behind the doctrine of claim preclusion, or *res judicata,* is "to relieve [the] parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Apparel Art International,* 48 F.3d at 583. The doctrine is "no 'mere matter of practice or procedure,' but 'a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts.'" *Kale,* 924 F.2d at 1168, *quoting Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Therefore, the First Circuit Court of Appeals has mandated a steadfast adherence to the doctrine. *Kale,* 924 F.2d at 1168 ("Any idiosyncratic unfairness that may result from the consistent and straightforward application of preclusion principles is . . . far out-

weighed by the systemic benefits which flow from steadfast adherence to so salutary a doctrine.") In fact, although the First Circuit has recognized that an occasional exception to the rule may exist in order to prevent "unusual hardship", *Kale,* 924 F.2d at 1168, it has yet to find a specific instance where it would apply. *Id.; Rose v. Town of Harwich,* 778 F.2d 77, 82 (1st Cir.1985) ("If, as the Restatement suggests, there may nonetheless be an occasional exception to prevent unusual hardship, this case does not fall within it. This is not a case in which the plaintiff has 'clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason'.").

■ Three elements are required to establish claim preclusion: (1) that there is a final judgment on the merits in a prior action; (2) that the parties in the prior and the subsequent action are sufficiently identical; and (3) that the causes of action in the two cases are sufficiently identical. *Apparel Art,* 48 F.3d at 583; *Kale,* 924 F.2d at 1165.

In this case, Plaintiff admits that there is a final judgment on the merits in a prior action and that there is an "absolute identity" of the parties in the prior and subsequent action. (Docket # 18 at p. 7). Plaintiff contests only the third element of claim preclusion, sufficient identicalness between the causes of action in the earlier and later suits. (Docket # 18 at p. 7). Regarding this element, the First Circuit has stated that:

[T]he phrase 'identity of cause of action' is more easily stated than defined. A single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law. Yet, such heterogeneity alone does not work an exception to the rule of preclusion. So long as different theories of recovery, howsoever prolific, derive from the same cause of action, the requisite identity is achieved if, and to the extent that, all

such theories concern 'the same operative nucleus of fact.' In other words, as long as the 'new complaint grows out of the same 'transaction or series of connected transactions' as the old complaint,' the causes of action are considered to be identical for *res judicata* purposes ... **[T]hat is, if [the claims in both the previous and subsequent action] were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, the two suits advanced the same cause of action notwithstanding any differences in remedies sought or theories of recovery pleaded. A fortiori, [the court's] focus must not be the theoretical raiment in which the claims are robed, but 'whether the underlying facts of both transactions were the same or substantially similar.'**

*Kale,* 924 F.2d at 1166, (citations omitted).

■ In this case the Court notes, after a careful examination of the complaint in *Goya I,* that the cause of action asserted by the plaintiff therein concerned the constitutionality of Regulation # 5; the same regulation that is under attack here in *Goya II.* In addition, the complaint in *Goya I* was premised upon the same allegations of economic protectionism from the Commonwealth of Puerto Rico that Goya advances in the case at bar, (*Goya II* ).

According to the complaint in *Goya I,* the circumstances that gave rise to Goya's complaint were the warehousing of about 54,000 boxes of pigeon peas, allegedly caused by the Secretary of Agriculture's actions in subjecting Goya to a double inspection by the FDA and the Commonwealth's Department of Agriculture, the obtainment of a certificate and the imposition of tariffs. (Docket # 15, Defendants' Exhibit A ¶ 16). The complaint in *Goya I* however, made specific allegations regarding Articles III(E)(10)(i), III(E)(11), Article IV(C)(1–5), Article VI(1), Article

VIII(B), and Article IX(A)(1) of Regulation # 5.

The *Goya I* complaint alleged in the first cause of action, that Regulation # 5 is vague and ambiguous, that it "compels importers of pigeon peas to comply with unnecessary, burdensome, discriminatory and even impossible requirements resulting in the singular purpose or effect of isolating state producers from competitive interstate commerce commodities." (Docket # 15, Defendants' Exhibit A ¶ 41). In addition, the complaint also alleged that Regulation # 5 violated the Interstate Commerce Clause of the U.S. Constitution. (Docket # 15, Defendants' Exhibit A ¶ 43).

The second cause of action in the *Goya I* complaint alleged that the "Secretary acted and continues to act in a discriminatory manner to the prejudice of Goya for the sole purpose of benefitting and protecting local processors and producers of pigeon peas", (Docket # 15, Defendants' Exhibit A ¶ 45); and that "Regulation # 5 is discriminatory on its face because local producers do not have to comply with the myriad requirements imposed on the importers of pigeon peas." (Docket # 15, Defendants' Exhibit A ¶ 47).

The third cause of action in the *Goya I* complaint alleged that the Secretary of Agriculture's actions violated Goya's rights under the General Agreement on Tariffs and Trade (GATT). (Docket # 15, Defendants' Exhibit A).

The fourth cause of action in *Goya I* stated that the Secretary of Agriculture's actions violated the labeling requirements of the federal Food, Drug and Cosmetic Act ("FFDC"). (Docket # 15, Defendants' Exhibit A).

Goya's prayer for relief in *Goya I,* requested that the Court find Regulation # 5 unconstitutional *per se* because it imposed a discriminatory and unreasonable restriction on interstate commerce, it violated the equal protection of the laws, it violated the provisions of GATT, and it conflicted with federal regulations existing under the

FFDC. However, the Court did not grant Plaintiff the full relief sought therein. Rather, it declared Articles III(E)(11), IV(C)(1–5), VIII(B) and IX(A)(B) of Regulation #5 unconstitutional, and decreed that Article VI conflicted with federal law. The reasons behind the court's holding in *Goya I*, are not a proper subject of inquiry to the Court now, since that judgment has become final. However, what is of concern to the Court now is that the court in *Goya I* did not address the constitutionality of the regulation as a whole, nor of any other sections in particular.

In the case at bar, Goya makes essentially the same allegations that it made in the complaint in *Goya I*, with the only exception that the allegations in the complaint at bar only concern those articles of Regulation #5 that were left in effect by Judge Cerezo in *Goya I*. Goya fails to indicate how the allegations in *Goya II* defer from the ones it asserted in *Goya I*. In addition, Goya fails to indicate how the instant case arises from a different nucleus of operative facts than those involved in the case of *Goya I*.[2] Rather it is evident that the instant case is an attempt by Goya to invalidate what Judge Cerezo left in effect in *Goya I*.

In its motion, Goya merely argues that there are new facts transpiring after the opinion of Judge Cerezo in *Goya I*, that have only recently come to its attention. (Docket #18 at p. 9). However, the Court is not persuaded by Goya's argument because Regulation #5 was in full force and effect before Goya filed the case of *Goya I*, and in fact, the complaint filed in *Goya I*, challenged the validity of the regulation in general, although it made specific reference to certain articles in particular. Furthermore, the regulation has not been amended since the judgment in *Goya I*, to include new provisions that were not in

effect at the time Goya filed the complaint in that case.

Finally, the Court finds that the events that have transpired since the final judgment in *Goya I*, were foreseeable at the time the complaint in that case was filed. Therefore, the Court finds that all the elements of claim preclusion are present in this case because the cause of action in the present case is sufficiently identical to the one posed in *Goya I*. In addition, the Court finds that Goya waived in that case the claims that it now intends to assert before this Court in a new and separate case.

In regards to Goya's argument that even if the cause of action in *Goya I* and the cause of action in the above-referenced case against Miguel Muñoz–Muñoz and Andrés Rosado–Padilla are identical, the Court should make an exception because of unusual hardship; the Court finds that it is not warranted for the following reasons. A careful study of the challenged provisions, in conjunction with the evidence presented to the Court at the preliminary injunction hearing held on March 29, 2000, do not show a *prima facie* case of unconstitutional discrimination, that would justify a departure from the standard rules of *res judicata*.

In this regard, the Court notes that Plaintiff is challenging the regulation's constitutionality based on the Commerce Clause of the U.S. Constitution, which grants Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. Plaintiff alleges that the regulation violates the "dormant" aspect of the Commerce Clause. (Docket #1, Complaint ¶49).

---

2. In fact, the *Goya I* complaint at ¶9, stated: "In the past, Goya has unsuccessfully approached the Department of Agriculture in order to show that Regulation #5 at the present serves no useful purpose other increasing [sic] the cost of imported pigeon peas to the detriment of the Puerto Rican consumer. Consequently, Goya has no other alternative but to file the instant complaint to request the immediate repeal of Regulation #5." (Docket #15, Defendants' Exhibit A ¶9).

■ The U.S. Supreme Court has held that although the commerce clause speaks in terms of powers bestowed upon Congress, in its dormant aspect it also limits the power of the States to erect barriers against interstate trade. *Maine v. Taylor*, 477 U.S. 131, 137, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986), *quoting Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980). However, this limitation is not absolute, "and 'the States retain authority under their general police powers to regulate matters of legitimate local concern,' even though intestate commerce may be affected." *Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. 2440 (citations omitted). Although the Commonwealth of Puerto Rico is not a state, it is nevertheless restricted by the Commerce Clause to the same extent that the states are. *United Egg Producers v. Department of Agriculture*, 77 F.3d 567, 569 (1st Cir.1996).

For purposes of differentiating between constitutionally permitted restrictions on interstate commerce and those that are prohibited, the U.S. Supreme Court has adopted a two tiered approach. *Healy v. Beer Institute*, 491 U.S. 324, 337, n. 14, 109 S.Ct. 2491, 105 L.Ed.2d 275. This means that the analysis used will be different depending on whether the laws and regulations at issue burden interstate commercial transactions only incidentally, or whether the involved laws and regulations affirmatively discriminate against interstate commerce. *Id.; Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. 2440, 91 L.Ed.2d 110.

■ If the statute or regulation establishes only an incidental burden on interstate commerce, it will be held to violate the Commerce Clause "only if the burden[ ][it] impose[s] on interstate trade [is] clearly excessive in relation to putative local benefits." *Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. 2440; *Healy*, 491 U.S. at 337, n. 14, 109 S.Ct. 2491 (Stating that when the attacked statute or regulation affects commerce only incidentally and

regulates evenhandedly, the court will proceed to determine "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds local benefits"); *Starlight v. Neftali Soto*, 909 F.Supp. 853, 858 (D.P.R.1995) ("If the statute is not facially discriminatory, the Court will then proceed to … balance the incidental burdens imposed on interstate commerce against the benefits to local interests.")

■ However, if the statute or regulation is facially discriminatory it will be subjected to a strict scrutiny. *Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. 2440; *Hughes v. Oklahoma*, 441 U.S. 322, 338, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) ("At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives.") This standard requires that the State justify the statute or regulation "both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Id.* at 337, 99 S.Ct. 1727; *Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. 2440.

■ A statute or regulation is facially discriminatory when "[it] directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Healy*, 491 U.S. at 337, n. 14, 109 S.Ct. 2491. If that is the case, "the statute is deemed *per se* invalid, justifiable only by a compelling state interest." *Starlight Sugar Inc. v. Neftali Soto*, 909 F.Supp. 853, 858 (D.P.R.1995).

■ The regulation under attack in this case, as it stands after the judgment of Judge Cerezo in *Goya I*, is not facially discriminatory because the provisions that are being enforced are equally applicable to local and foreign [3] producers of pigeon peas. The articles of Regulation # 5 that

**3.** "Foreign" as used in this context means "out-of-state".

were facially discriminatory or otherwise conflicted with federal law were invalidated by Judge Cerezo in the case of *Goya I.* The regulation as it now stands, establishes a license and inspection requirement that are equally applicable to in-state and out-of-state producers of pigeon peas. These requirements are not burdensome to interstate commerce and in addition, they serve a legitimate local purpose in protecting the health and the interest of the consumers. At the hearing held on March 29, 2000, the parties made reference to various exhibits attached to their respective motions. These showed that Regulation # 5 serves a legitimate public purpose. The Department of Agriculture, through the inspections performed pursuant to Regulation # 5 has been able to detect foreign material contained in some cans of pigeon peas [4], including stones and worms, (Docket # 13, Co-defendants Exhibit 1–4, 6), rust in the cans, (Docket # 13, Co-defendants Exhibit 7), and low-drained weights and grade defects, (Docket # 13, Co-defendants Exhibit 7).

Therefore, the Court finds that the provisions of Regulation # 5 that are being enforced by the Commonwealth of Puerto Rico are not discriminatory *per se.* Any further inquiry would imply entering into the merits of Plaintiff's claim, something that the Court is not required to do for purposes of this order. Suffice it to say that the Court is not convinced that Regulation # 5 as it now stands imposes a burden that would amount to the kind of "unusual hardship" or "extraordinary reason" to warrant an exception from the standard rules of claim preclusion. *Rose v. Town of Harwich,* 778 F.2d at 82; *Kale,* 924 F.2d at 1168.

Accordingly, co-defendants motion to dismiss on grounds of claim preclusion, **(Docket # 15),** is hereby **GRANTED,** and the above-captioned case is consequently

**4.** The documents submitted to the Court do not show that these defects were found on cans of pigeon peas produced by Goya, never-

DISMISSED. Judgment shall be entered accordingly.

**SO ORDERED.**

theless they serve to show the public purpose and effect of the application of Regulation # 5.